## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLORADO

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JOHN CRUZ and PIP PERSONAL<br>IDENTITY PROTECTION LLC,<br><br>　　　　　　Defendants. | Civil Action No. 1:24-cv-933<br><br>**JURY TRIAL DEMAND** |

## COMPLAINT

Plaintiff Allstate Insurance Company ("Allstate"), by and through its attorneys, brings this Complaint against Defendants John Cruz ("Cruz") and PIP Personal Identity Protection LLC (the "LLC") (Cruz and the LLC, jointly "Defendants") and states as follows:

## INTRODUCTION

1.　　After months of litigation against Cruz for breaching his Allstate Exclusive Independent Contractor Agreement and stealing its trade secrets, Allstate thought its interactions with former Allstate Exclusive Agent[1] John Cruz were over. But in late March 2024—less than a month after that case concluded—to its shock and horror, Allstate learned that Cruz and his LLC are now harassing Allstate through a smear campaign. Specifically, Defendants are broadcasting false claims that Allstate is selling its customers' sensitive information to, among other things, further criminal activity.

---

[1] Allstate enters into agreements with independent contractors, referred to as "Exclusive Agents," who then sell Allstate insurance products.

2.    Defendants are publishing their false lies through at least two websites (www.savemepip.com and www.pip-personalidentityprotection.com) and four social media accounts (Facebook, LinkedIn, Instagram, and YouTube).

3.    Defendants' websites falsely claim that Allstate and its "subsidiary companies" "leaked" sensitive and personal customer information (name, social security number, date of birth, and drivers' license).[2] These claims are blatantly false: a simple review of Allstate's published privacy policy clearly states that Allstate does not sell any sensitive personal information for any purpose. *See* ALLSTATE INS. CO., Allstate Online Privacy Statement (effective Mar. 7, 2024), available at https://www.allstate.com/privacy-center/aic-privacy-statement

4.    One of Defendants' websites also states that "Allstate representatives have stated under oath in Federal court, [that] Allstate representatives are allowed to refer/share/transfer your personal information to anyone."[3] Again, this claim is blatantly false.

5.    Both websites contain videos accusing Allstate of selling its customers' personal information in exchange for gift cards used in furtherance of human trafficking, sex trafficking, and rape. In this way, the websites indicate that Allstate has (i) breached the trust of millions of its customers; and (ii) engaged in wrongful or criminal behavior.

6.    Additionally, Defendants have posted excerpts from the confidential depositions of Allstate employees in Allstate's case against Cruz[4]—in violation of the protective order in that case—on Defendants' websites.

---

[2]  *See* https://savemepip.com/about-us-2/ (last accessed Mar. 28, 2024); https://www.pip-personalidentityprotection.com/background (last accessed Mar. 28, 2024).

[3] https://www.pip-personalidentityprotection.com/background.

[4] *Allstate Ins. Co. v. John Cruz,* Case No. 20-cv-03139-DDD-MEH (D. Colo.) (The "Allstate Lawsuit").

7.      And perhaps even more disturbing, <u>Defendants have placed advertisements on CNN and MSNBC with these false statements in order to drive traffic to those websites</u>. Defendants have also created Instagram pages for the false statements and posted about the false statements on LinkedIn, Facebook, and YouTube.

8.      Defendants' allegations that Allstate is stealing its customer information to further criminal activity is false. Allstate's privacy policy states that it does not sell customer information, and Allstate is not otherwise engaged in criminal or fraudulent activity.

9.      Defendants know that these statements are false. Cruz made these same false allegations in the Allstate Lawsuit and did not provide any evidence to support his claims. Further, in its summary judgment ruling, the Court explicitly found that Allstate takes steps to protect its customers' information, and that "any sharing of customer information, including contact information…is only done with the customer's consent." (ECF No. 221 at 18). Cruz later agreed to dismiss all claims with prejudice, further acknowledging their falsity.

10.     Thus, out of spite and vengeance, Cruz, independently and through his LLC, aims to inflict as much harm on Allstate as possible through once again spreading false lies about Allstate. Given that Cruz will clearly not stop his smear campaign absent Court intervention, Allstate has no choice but to file this suit against Defendants for (1) Defamation and (2) Violation of the Colorado Deceptive Trade Practices Act (C.R.S. § 6-1-101, et seq).

11.     In doing so, Allstate asks that this Court, in addition to awarding Allstate compensatory damages, punitive damages and attorneys' fees, to enter an order a) requiring Defendants to immediately retract and remove any and all false and defamatory statements concerning Allstate on their websites and social media platforms and b) enjoining Defendants from making further defamatory statements.

12. Immediate injunctive relief is required because Defendants' false statements continue to harm Allstate. There can be no question that if the statements on their websites and social media account are not removed, they will cause harm to Allstate's reputation and goodwill. Further, Cruz is set to start a criminal trial on April 29, 2024 for sixteen counts relating to theft, forgery, and identity theft. Should Cruz be convicted and incarcerated, he may no longer have access to the websites or social media accounts, and as a result, Allstate may not be able to shut down the websites.

## PARTIES

13. Plaintiff Allstate is an Illinois corporation with its principal place of business in Northbrook, Illinois.

14. Defendant John Cruz is a citizen of the State of Colorado and resides in Longmont, Colorado.

15. Defendant Pip Personal Identity Protection LLC is a Colorado company with its principal place of business at 1130 Francis Street, Suite 7006, Longmont, Colorado 80501. Upon information and belief, Pip Personal Identity Protection LLC has two members: Defendant John Cruz and his wife, Denise Cruz. Both John Cruz and Denise Cruz are residents of Longmont, Colorado.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to Article VI, Section 9 of the Colorado Constitution (giving federal district courts general jurisdiction in Colorado for all civil cases); C.R.S. § 13-1-124 (Colorado's long arm statute); and 28 U.S.C. § 1332(a), because this action and controversy is between citizens of different states and exceeds the value of $75,000 exclusive of interest and costs.

17.     This Court has personal jurisdiction over Cruz because Cruz is a citizen and resident of the State of Colorado, and, pursuant to C.R.S. § 13-1-124, because Cruz transacts business in Colorado and committed tortious acts against Allstate in Colorado.

18.     Likewise, this Court has personal jurisdiction over the LLC because it is a citizen of the State of Colorado, and, pursuant to C.R.S. § 13-1-124, because it transacts business in Colorado and committed tortious acts against Allstate in Colorado.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

### Allstate's Previous Litigation with Cruz

20.     Cruz is a former Allstate Exclusive Agent who sold Allstate products from 2011 to 2020 under an Allstate Exclusive Agent Agreement ("Agreement"). Under the terms of the Agreement, Cruz could not sell insurance products that competed with products sold by Allstate. In October 2019, an internal Allstate investigation revealed that Cruz was selling insurance products that competed with Allstate products, despite being barred from doing so by the Agreement. As a result, Allstate terminated Cruz's Agreement and relationship with Allstate.

21.     Following the termination of Cruz's Agreement, Cruz continued to solicit business from Allstate customers and otherwise violate the surviving terms of the Agreement.

22.     Consequently, on October 20, 2020, Allstate filed suit against Cruz for breach of the Agreement and misappropriation of trade secrets. Cruz filed counterclaims against Allstate for a variety of unsubstantiated claims. In support of his counterclaims, Cruz repeatedly alleged that Allstate sold personal customer information to third parties, even though there was simply no evidence to support these claims.

23.     The parties engaged in written discovery and took several depositions. On February 24, 2021, this Court entered a Protective Order to facilitate the discovery process. *See Allstate Ins. Co. v. Cruz,* Case No. 20-cv-03139-DDD-MEH (D. Colo.) at ECF No. 55. Paragraph 2 of the Protective Order defines Confidential Information as "any document, electronically stored information, testimony, or response to a discovery request, including any extract, abstract, chart, summary, note, or copy made therefrom—not made available to the public—and designated by one of the Parties in the manner provided below as containing: customer information, information that implicates common law and/or statutory privacy interests; competitive business information or information that a party believes is otherwise entitled to protection." *Id.* at ¶ 2. Paragraph 6 of the Protective Order prohibits the disclosure of Confidential Information to anyone other than attorneys working on the Case, the Parties, the Court, and other persons by written agreement. *Id.* at ¶ 6. Further, Paragraph 9 of the Protective Order requires the return or destruction of Confidential Information upon the conclusion of the Case. *Id.* at ¶ 9. Throughout the course of discovery, Allstate marked several documents and transcripts Confidential pursuant to the terms of the Protective Order, including the deposition transcripts of "Buyer Depot,"[5] Richard Poduska, Elise Teague, Erika Lousberg, Jodi Lynch, Dino DiCarlo, and Rebecca Martens.

24.     During the course of discovery, Cruz provided no evidence to support his claims that Allstate sold personal customer information to third parties.

25.     Both parties moved for summary judgment on Allstate's breach of contract claim and all of Cruz's counterclaims. *See Allstate Ins. Co. v. Cruz,* Case No. 20-cv-03139-DDD-MEH

---

[5] Allstate notes that this partial deposition transcript is listed as "Buyer Depot" on Cruz's websites, but the deponent indicated therein is listed simply as "Buyer." Allstate is unable to glean the identity of the deponent from Cruz's websites, but states that the first page of the partial deposition transcript clearly references the case number for this action.

(D. Colo.) at ECF Nos. 191, 196.[6] This Court referred these motions to the Honorable Michael Hagerty, who issued his Recommendations on April 14, 2023. *Id.* at ECF Nos. 200, 221. Judge Hagerty recommended granting Allstate's motion and denying Cruz's motion. *Id.* at ECF No. 221. Cruz filed his Objections to that Recommendation on May 23, 2023, and Allstate responded on June 6, 2023. *Id.* at ECF Nos. 231, 233.

26.     On September 20, 2023, this Court adopted the Recommendation and granted Allstate's motion for summary judgment on all of Cruz's counterclaims and otherwise denied Cruz's request for summary judgment on those counts. *Id.* at ECF No. 236 (pp. 8–9). The Court also granted Allstate's motion for summary judgment on its breach of contract claim as to liability. *Id.* In its Order, the Court noted that "it is undisputed that Cruz violated the post-termination restrictive covenants at issue, including by competing with Allstate from the same location he used as an [Allstate Exclusive Agent] and soliciting its customers." *Id.* at 7.

27.     The Court also pointed out the complete lack of evidence offered by Cruz in support of any of his counterclaims, emphasizing how Cruz's claims rely "on conclusory and self-serving statements and fail[] to address Allstate's arguments or make the showings required by applicable law." *Id.* at 8.

28.     After the summary judgment ruling, Cruz repeatedly stated that he planned to appeal the summary judgment ruling.

29.     Yet, on March 5, 2024, the parties attended a status conference with the Court. During that conference, Cruz represented that he no longer intended to appeal the Court's summary judgment ruling. He further stated that he was willing to dismiss his claims. In response, Allstate

---

[6] Neither Allstate nor Cruz moved for summary judgment on Allstate's trade secrets claims. *See* Dkt. 236 ("Neither of the Parties motions seek summary judgment with respect to Allstate's trade secret claims.")

agreed to dismiss its remaining trade secrets claims. With the guidance of the Court, the parties agreed to stipulate to a dismissal of all claims with prejudice *Allstate Ins. Co. v. Cruz,* Case No. 20-cv-03139-DDD-MEH (D. Colo.) at ECF No. 272. Accordingly, this Court dismissed all claims with prejudice and terminated the Case on March 5. *Id.* at ECF No. 271. The Court also stated on the record that the only comment that either Cruz or Allstate could make about the case was that the parties "resolved [their] differences and [] agreed to [] dismiss the case." *Id.* at Transcript, March 5 Proceeding. Accordingly, "both parties agree[d] to dismiss all claims that were or could have been brought in this lawsuit with prejudice." *Id.*

**Cruz Defames Allstate and Publishes Confidential Transcripts from the Allstate Lawsuit in Violation of the Protective Order**

30.     According to records filed with the Colorado Secretary of State, Cruz formed his LLC on October 26, 2023—one month after the Court issued its Order in favor of Allstate in the Allstate Lawsuit.

31.     Cruz never disclosed the existence of his LLC to either Allstate or the Court. Nor did he inform Allstate or the Court of his plan to exact revenge on Allstate as a result of losing the summary ruling.

32.     In late March 2024, Allstate discovered that Cruz had created  two websites advertising his LLC's identity protection "services": www.savemepip.com and www.pip-personalidentityprotection.com. The websites purport to sell identity theft protection services, but that façade belies a more sinister purpose. **Both websites prominently display false and defamatory claims about Allstate: namely, that Allstate has exposed the sensitive personal information of its customers.**



*Figure 1*: "Background" page at www.pip-personalidentityprotection.com/background (last accessed Mar. 28, 2024).

33.     Both websites are owned and operated by Cruz. The phone number listed on the website is affiliated with the location of Cruz's former Allstate Agency location. Additionally, the fact that the websites contain excerpts of the confidential deposition transcripts from the Allstate lawsuit—transcripts that only the parties to the lawsuit would have access to—provides further evidence of Cruz's involvement, ownership, and defamatory scheme.

34.     Both websites shift between selling an unidentifiable "24/7 monitoring" identity protection service and defaming Allstate. For example, on the www.savemepip.com website, the Home Page includes applications to "safeguard your future" that links to an affiliate page with third-party identity protection service LegalShield, https://personal75.wearelegalshield.com/. Under LegalShield's affiliate program, Defendants earn a commission on every LegalShield plan he sells through his website. Just underneath the application, the website reads:



**_Figure 2_**: "Home" page at www.savemepip.com (last accessed Mar. 28, 2024).

35.      In conjunction with their false and defamatory statements about Allstate on their websites, Defendants have posted no less than seven excerpts from confidential depositions in the Allstate Lawsuit, including depositions of Allstate personnel. This is a reckless and blatant violation of the Protective Order in that matter, which prohibits Cruz from disclosing confidential information from the lawsuit and requires Cruz to return or destroy all confidential information upon the conclusion of the Allstate Lawsuit.



**_Figure 3_**: "Home" page at www.savemepip.com (last accessed Mar. 28, 2024).



**Figure 4**: "Home" page at https://pip-personalidentityprotection.com/ (last accessed March 29, 2024)

36.     Just as important, none of the deposition transcripts published by Defendants support any of the defamatory statements Defendants make against Allstate.

37.     In addition, Defendants make at least nine false and defamatory statements about Allstate on https://savemepip.com/:

a.     The homepage and "Protect yourself" pages of https://savemepip.com/ contain a video stating that consumers who "checked Allstate for insurance" or "purchased an extended warranty from Allstate" have had their sensitive personal information stolen. The video further claims that "Allstate has testified that Allstate sells your personal information to anyone for gift cards. Your name, social security, date of

birth, drivers license. You are not in good hands. You need personal identity protection."

b.    The homepage and "About Us" pages of https://savemepip.com/ state: "Why we began. Anyone who got a warranty from[.] PIP-Personal Identity Protection was created to protect the Identity of anyone who gave Allstate Insurance Company their personal information. Name, Social Security Number, Date of Birth, Drivers License. Anyone who gave their personal information to any of Allstate subsidiary companies[.]" The website then displays the logos of companies including eBay, Sam's Club, Home Depot, and more.

c.    The homepage and "About Us" pages of https://savemepip.com/ state: "Allstate representatives have stated under oath in Federal Court[.] Depositions of Allstate Representatives, Allstate Executives are on PIP-Personal Identity Protection. Allstate representatives only need to follow three (3) rules[.]" On the homepage Defendants display the graphic that appears in **Figure 2**, above. On the "About Us" page, they created a different defamatory graphic using the same language.

d.    The "About Us" page of https://savemepip.com/ states: "About Us[,] Why We Began[.] PIP-Personal Identity Protection was created to protect the Identity of anyone who gave Allstate Insurance Company their personal information. Name, Social Security Number, Date of Birth, Drivers License. Anyone who gave their personal information to any of Allstate subsidiary companies[.]"

e.    At the top of the "Protect Yourself" page of https://savemepip.com/, the website states "Watch how ALLSTATE plays an important role with your identity theft."

The website then contains six animated videos created by Defendants, five of which explicitly defame Allstate.

  i.  The first video falsely states: "***Meet John, an unwitting Allstate customer. His personal details, name, social security number, birthdate, address were traded for gift cards***. Visa, Mastercard, American Express, and Target. ***John's life was traded for gift cards***. Armed with John's information, the culprit went further, discovering where he worked and his income. They applied for credit cards and secured new car loans, eventually selling the cars for parts. Days later, ***John's world crumbled***. His credit score tanked, and he realized his identity was used for fraud. The credit cards remained unpaid, leaving John with the consequences. Destroyed credit, unpaid debts, and a life in disarray."

  ii.  The second video falsely states: "Meet John. Intent on gifting his wife a Costco washer and dryer ***with an Allstate warranty***. Little did he know ***this decision would spiral into chao***s. ***With trust, John shared personal details on Allstate's site for the warranty. Unbeknownst to him, his info was traded for gift cards,*** leading to false speeding accusations. Another man gets pulled over by police for speeding. He has an authenticated driver's license, which was actually ***John's personal information bought from Allstate by giving gift cards***. After vacation, he discovered his compromised identity caused legal trouble by being arrested for three major speeding tickets. ***Allstate's careless data handling shattered trust***. Sadly, ***Allstate refers, shares and transfers your identity to anyone paid with gift cards. This is what can happen to you when getting insurance from Allstate.*** Keep safe. Keep Happy."

iii.     The third video falsely states: "In a chilling tale of identity theft and its devastating consequences, a seemingly innocent transaction that **Allstate turns into a tragic human trafficking scheme**." The video claims that nefarious actors can purchase "personal information (names, addresses, social security numbers, and driver's license details" with "gift cards." The narrative continues, "a father in dire need seeking asylum for his wife (47) and daughter (13) finds his hopes shattered… **His wife and daughter were beaten, raped, murdered**. Only through the purchased identities were they identified; their lives taken for a few thousand dollars. As authorities trace back confronting a man who claims missed family, the truth emerges. **Allstate's negligence in safeguarding customers' data, refusing accountability, is a betrayal of trust. Their silence leaves lives shattered**. **A stark reminder of the grave consequences of unchecked information sharing**."

iv.     The fourth video again connects Allstate to human trafficking and rape, falsely claiming that "**Allstate refers, shares and transfers identities to anyone**," including a sex trafficker who impregnated a missing child and used stolen identities purchased from Allstate to continue his criminal activity.

v.     The fifth video also appears on the homepage of https://savemepip.com/. It falsely claims that consumers who have "**checked Allstate for insurance**" or "**purchased an extended warranty from Allstate**" have had their sensitive personal information stolen. The video claims that "**Allstate has testified that Allstate sells your personal information to anyone for gift cards. Your name, social security, date of birth, drivers license. You are not in good hands.**" You need personal identity protection."

15

38.     Defendants' second website, https://pip-personalidentityprotection.com, makes nearly identical false and defamatory accusations against Allstate:

a.     Like https://savemepip.com/, the "Background" page of https://pip-personalidentityprotection.com falsely states: "Why We Began[.] PIP-Personal Identity Protection was created to protect the Identity of anyone who gave Allstate Insurance Company their personal information. Name, Social Security Number, Date of Birth, Drivers License. Anyone who gave their personal information to any of Allstate subsidiarity companies:" Defendants then display graphics of several of Allstate subsidiaries, as well as companies such as Costco and Walmart. This section of the website also includes a hyperlink to a document that lists every subsidiary of Allstate.

b.     The "Background" page of https://pip-personalidentityprotection.com also states that "Allstate representatives have stated under oath in Federal Court, Allstate representatives are allowed to refer/share/transfer your personal information to anyone." The website then directs visitors to the "Homepage," which contains excerpts of the confidential depositions taken in the Allstate Lawsuit against Cruz.

c.     The top of the "Protect Yourself" page of https://pip-personalidentityprotection.com, states "Watch how ALLSTATE plays an important role with your **identity theft**" (emphasis in original).  It then contains four of the five defamatory videos described above. Specifically:

i.     The first video falsely states: "Meet John. Intent on gifting his wife a Costco washer and dryer with an Allstate warranty. Little did he know this decision would spiral into chaos. ***With trust, John shared***

*personal details on Allstate's site for the warranty. Unbeknownst to him his info was traded for gift cards,* leading to false speeding accusations. Another man gets pulled over by police for speeding. He has authenticated driver's license which was actually ***John's personal information bought from Allstate by giving gift cards***. After vacation, he discovered his compromised identity caused legal trouble by being arrested for three major speeding tickets. ***Allstate's careless data handling shattered trust***. Sadly, ***Allstate refers, shares and transfers your identity to anyone paid with gift cards.*** This is what can happen to you when getting insurance from Allstate. Keep safe. Keep Happy."

ii.     The second video falsely states: "***Meet John, an unwitting Allstate customer. His personal details, name, social security number, birthdate, address were traded for gift cards***. Visa, Mastercard, American Express, and Target. John's life was traded for gift cards. Armed with John's information, the culprit went further, discovering where he worked and his income. They applied for credit cards and secured new car loans eventually selling the cars for parts. Days later, John's world crumbled. His credit score tanked and he realized his identity was used for fraud. The credit cards remained unpaid, leaving John with the consequences. Destroyed credit, unpaid debts, and a life in disarray."

iii.     The third video falsely states: "In a chilling tale of identity theft and its devastating consequences, a seemingly innocent transaction that ***Allstate turns into a tragic human trafficking scheme***." The video

claims that nefarious actors can purchase "personal information (names, addresses, social security numbers, and drivers license details" with "gift cards." The narrative continues, "a father in dire need seeking asylum for his wife (47) and daughter (13) finds his hopes shattered… His wife and daughter were beaten, raped, murdered. Only through the purchased identities were they identified; their lives taken for a few thousand dollars. As authorities trace back confronting a man who claims missed family, the truth emerges. ***Allstate's negligence in safeguarding customers' data, refusing accountability, is a betrayal of trust. Their silence leaves lives shattered***. ***A stark reminder of the grave consequences of unchecked information sharing***."

      iv.    The fourth video again connects Allstate to human trafficking and rape, falsely claiming that "***Allstate refers, shares and transfers identities to anyone***," including a sex trafficker who impregnated a missing child and used stolen identities purchased from Allstate to continue his criminal activity.

39.    All of Defendants' claims about Allstate are false and defamatory *per se*. They wrongfully assert that Allstate has stolen valuable and sensitive information from all of its customers, sold that information to criminals, and enabled schemes of human trafficking.

40.    Likewise, the statements on https://savemepip.com/ and https://pip-personalidentityprotection.com falsely assert that Allstate engages in criminal and fraudulent activity. These allegations necessarily impugn Allstate's trustworthiness.

**Defendants Defame Allstate on Social Media**

41.     In February 2024 and unbeknownst to Allstate, Defendants began spreading their defamatory messages on LinkedIn, on Instagram, on Facebook, and on YouTube. As of the date of this Complaint, Cruz has posted eight defamatory posts on LinkedIn claiming that Allstate sells its customers' sensitive personal financial information for gift cards. Several of these LinkedIn posts also prominently display the defamatory videos (*see supra* ¶¶ 37.e), 38.c)) and/or link to https://savemepip.com/ and https://pip-personalidentityprotection.com.



***Figure 4:*** Cruz's Defamatory LinkedIn Post from February 2024.

42.     Defendants also created a Facebook page called "PIP – Personal Identity Protection," where he has been publishing defamatory Facebook posts, the above-mentioned videos, and links to his defamatory websites. As of the filing of this Complaint, Defendants have

posted at least three Facebook posts explicitly mentioning Allstate in writing or via video. They have posted many more that link to his defamatory websites.



***Figure 5***: Defendants' Defamatory Facebook Post from March 2024.

43.     Defendants have also turned to YouTube to further spread their lies about Allstate. Specifically, Defendants have posted at least one of the defamatory videos published across their websites to Cruz's YouTube channel.[7]

---

[7] *See https://www.youtube.com/watch?v=A6IF0AJLhwg&t=6s* (last accessed April 5, 2024).



*__Figure 6__*: Cruz's Defamatory YouTube Post from February 2024.

44.     Defendants have not stopped at LinkedIn, Facebook, and YouTube. In an effort to cause as much harm and widespread damage to Allstate as possible, Defendants also created an Instagram account where, since February 2024, they have posted at least four defamatory Instagram posts about Allstate. Their page, "PIP – Personal Identity Protection," is labeled as a "legal" organization. Defendants have posted many more Instagram posts to this page that link to their defamatory websites.



***Figure 7:*** Defendants' defamatory Instagram page.

**Defendants Defame Allstate on CNN and MSNBC**

45.    Upon information and belief, in March of 2024 and unbeknownst to Allstate, Defendants began advertising their defamatory websites on cable news networks and popular news websites. Specifically, Defendants purchased ad slots through local affiliates for linear programming on CNN and MSNBC, as well as advertising on CNN's website.

46.     Specifically, upon information and belief, Defendants purchased ad space through Coventry First, LLC, resulting in advertising for one of their websites being aired on MSNBC in the Chicago market at 11:54 a.m. local time on Thursday, March 28, 2024. That ad directed viewers to https://savemepip.com/.

47.     Upon information and belief, the same advertisement aired on CNN's local affiliate in the Chicago market around the same timeframe. The advertisement was also published on CNN's website.

48.     The purpose of advertising Defendants' websites on CNN and MSNBC was to drive traffic to their websites and ensure that as many people as possible heard their defamatory statements.  Another purpose was to cause as much harm to Allstate as possible.

**Defendants' Statements about Allstate Are False**

49.     Each and every statement Defendants have made about Allstate is false.

50.     Defendants have stated that Allstate sells its customers' personal information, including their name, social security number, date of birth, and driver's license information. That is not true. Allstate does not sell its customers' personal information, as explained in its publicly available privacy policy on their website: https://www.allstate.com/privacy-center. The website specifically states, "As a simple fact, we do not sell your personal information." Allstate also has a separate "privacy statement" on their website explaining in detail where each customers' personal information goes:   https://www.allstate.com/privacy-center/aic-privacy-statement. Allstate does not sell its customers' personal information.

51.     Defendants have stated that Allstate sells its customers' personal information for gift cards, and that Allstate "trades" customers' personal information for gift cards. That is not true. Allstate does not sell its customers' personal information at all, as explained in its publicly

available privacy policy on the Allstate website: https://www.allstate.com/privacy-center. The website specifically says, "As a simple fact, we do not sell your personal information." Allstate also has a separate "privacy statement" on its website explaining in detail where each customers' personal information goes: https://www.allstate.com/privacy-center/aic-privacy-statement. Allstate does not sell its customers' personal information for gift cards.

52.     Defendants have stated that Allstate representatives "need to follow three (3) rules." The first "rule" is to "use Allstate electronic communication, email, phone, fax. Used to transfer your personal information." This statement insinuates that Allstate is not careful or protective of its customers' sensitive personal information, and/or that Allstate does not follow all applicable data privacy laws. That is not true. Allstate's publicly available privacy statement enumerates the ways that Allstate uses its customers' personal information: https://www.allstate.com/privacy-center/aic-privacy-statement. Allstate does not use unchecked or electronic communication to transfer its customers' sensitive personal information. Allstate follows all applicable data privacy laws regarding the care and transfer of its customers' sensitive personal information.

53.     Defendants have stated that the "second rule" that Allstate representatives "need to follow" is that they are "not allowed to report to any government agency." That is not true. Allstate's publicly available privacy statement explains that Allstate "limit[s] access to your personal information to those who need it to do their jobs," and "compl[ies] with all applicable federal and state data security laws." (https://www.allstate.com/privacy-center/aic-privacy-statement). Allstate reports to applicable government agencies as required by law.

54.     Defendants have stated that the "third rule" that Allstate representatives "need to follow" is that the "only form of payment allowed to be paid to Allstate representatives" are "Gift

Cards." That is not true. That statement has no basis in reality. Allstate abides by all state and federal laws.

55.     Defendants have stated that Allstate engages in "careless data handling." That is not true. Allstate's publicly available privacy statement explains that Allstate "compl[ies] with all applicable federal and state data security laws." (https://www.allstate.com/privacy-center/aic-privacy-statement). Allstate handles data carefully, as required by law.

56.     Defendants have stated that Allstate has engaged in a "human trafficking scheme." That is not true, and the statement has no basis in reality. Allstate abides by all state and federal laws, including criminal laws, and is not involved in criminal activity regarding human trafficking.

57.     Defendants have stated that Allstate is "negligent in safeguarding customers' data" and has been "refusing accountability" with its "unchecked information sharing." That is not true. Allstate's publicly available privacy statement explains that Allstate "compl[ies] with all applicable federal and state data security laws." (https://www.allstate.com/privacy-center/aic-privacy-statement). Allstate handles data carefully, as required by law.

**Defendants Published their Statements about Allstate with Actual Malice**

58.     As set forth above, Defendants' statements about Allstate are unquestionably false. What's more, Defendants *knows* that they are false, but has published them anyway. Their knowingly false publication of statements accusing Allstate of being involved with sex trafficking is intended to harm Allstate's reputation. Indeed, Defendants' actual malice manifests itself in at least five different ways.

59.     Defendants knows that their statements about Allstate are false due to the fact that no evidence was produced in the Allstate Lawsuit to support these statements.

60.     The Court's summary judgment findings in the Allstate Lawsuit also show that Defendants knows their statements are false. In the Court's summary judgment recommendation, Magistrate Judge Hegarty held that the "uncontroverted record evidence shows that [Allstate] takes steps to protect" the names and contact information of its customers, "including educating" its agents "about protecting confidential information, keeping its databases password protected and only accessible on a need to know basis, having its [agents] and the [agents'] employees sign agreements which have confidentiality obligations, and putting in place safeguards to alert Allstate if confidential information is being improperly sent outside the systems." (ECF No. 221 at 18). The court additionally stated, "**Any sharing of customer information, including contact information, with a referral to an outside agency, is only done with the customer's consent**." (*Id.*)

61.     Furthermore, Defendants knows that their statements about Allstate are false from Allstate's publicly available privacy policy (https://www.allstate.com/privacy-center/aic-privacy-statement), which states that Allstate "compl[ies] with all applicable federal and state data security laws."

62.     Defendants also knows that their statements about Allstate are false from Allstate's publicly available website (https://www.allstate.com/privacy-center), which specifically states, "As a simple fact, we do not sell your personal information."

63.     Defendants knows that their statements about Allstate are false because they manipulated deposition transcripts that Cruz was given under the Protective Order in the Allstate Lawsuit, publicly posted them online, and used them as "evidence" to "support" his their position that Allstate sells customers' sensitive personal information in exchange for gift cards.

64.     As noted above, none of the depositions, including the deposition transcripts publicly posted by Defendants, from the Allstate Lawsuit support Defendants' claims.

65.     Specifically, none of the Allstate representatives or executives testified that Allstate sells its customers' sensitive personal information. None of the Allstate representatives or executives testified that Allstate sells its customers' sensitive personal information in exchange for gift cards. None of the Allstate representatives or executives testified that Allstate is involved in sex trafficking. None of the Allstate representatives or executives testified that Allstate violates data privacy laws or otherwise does not follow laws and regulations.

66.     Defendants knows that their statements about Allstate are false, but they chose to publish them anyway because they harbor ill will and a desire to harm Allstate. Cruz lost the previous lawsuit against Allstate at summary judgment and settled out of court. Upon information and belief, Cruz was angry with Allstate and desired vengeance. Cruz was acting out of spite and ill will when he published, both independently and through his LLC, the defamatory statements about Allstate.

67.     Defendants knows that their statements about Allstate are false, but they chose to publish them anyway in order to advance their own personal financial position and compete with Allstate. Defendants desires to sell insurance in competition with Allstate via LegalShield. The landing page of each of Defendants' defamatory websites contain links to an "application." Those "application" links re-direct a person to https://personal75.wearelegalshield.com/, a website that sells "protection for your family, your business & your personal identity." Defendants defame Allstate while simultaneously promoting his own insurance sales on LegalShield in order to garner more business for himself. Hence, Defendants are acting with a commercial purpose.

68.     Defendants acted (and are acting) with actual malice. They know that all of the statements they made about Allstate are false for three reasons. First, there are public court documents from litigation Cruz was a party to explaining that his claims about Allstate are false. Second, there are publicly available websites showing that Defendants' claims about Allstate are false. Third, Cruz has a motive to harm Allstate because of the prior litigation, and because he is competing with Allstate.

69.     Defendants' publication of these false statements has caused and will continue to cause Allstate to suffer irreparable harm. Specifically, Allstate enjoys a strong reputation with its customers and the public at large. It has invested millions of dollars in advertising and brand awareness. Its reputation and brand are one of Allstate's most valuable assets. The false statements on Defendants' websites, which they are also promoting on social media, are causing harm to that reputation and brand. What's more, the ongoing harm from those statements is difficult to measure because it proliferates as it gets picked up by other users on social media and online. This harm includes, but is not limited to, reputational harm and loss of customer goodwill.

70.     Further, separately and unbeknownst to Allstate, in March 2022, Cruz was indicted by the State of Colorado on sixteen counts of theft, forgery, and identity theft, among other claims. Cruz is set to begin his criminal trial in three weeks, on April 29, 2024. Should Cruz be convicted, Allstate may not be able to remove these false statements from the public domain. As a result, immediate injunctive relief is necessary.

## COUNT I: DEFAMATION

71.     Allstate repeats and incorporates herein by reference each of the allegations set forth above as if fully set forth herein.

72.     The defamatory statements as outlined in Paragraphs 1–57, written and published by Defendants, falsely claimed without privilege that Allstate sells its customers' sensitive personal information to criminals in exchange for gift cards. This concerns existing facts that were capable of objective verification.

73.     The defamatory statements specifically identify Plaintiff Allstate by name and were about and concerning Allstate.

74.     The defamatory statements were published, made available, and republished on multiple online platforms: (1) via two of Defendants' websites; (2) on LinkedIn; (3) on Instagram; (4) on Facebook; (5) YouTube; (6) on CNN; and (7) on MSNBC.

75.     Defendants' statements are defamatory *per se*. By claiming that Allstate was selling its customers' sensitive information for gift cards, Defendants impute a want of integrity and lack of integrity by Allstate in conducting its profession. By claiming that Allstate sold its customers' sensitive information to criminals, Defendants accuse Allstate of committing a crime. By claiming that Allstate enabled schemes of human trafficking, sex trafficking, and rape through selling sensitive customer information, Defendants further accuse Allstate of committing crimes.

76.     Defendants had no reasonable basis for the statements. Defendants also knew that the statements were false or published them with a reckless disregard of whether they were true or false. The actions of Defendants were therefore done with actual malice.

77.     On information and belief, the defamatory statements were published out of spite and vengeance following a separate legal proceeding between Allstate and Defendants.

78.     Allstate has sustained financial, reputational, and other injuries as a result of Defendants' defamation. Such injuries (including legal fees) exceed $75,000.

79.     Allstate further requests injunctive relief due to the irreparable harm it has suffered and will continue to suffer so long as Defendants' false statements remain in the public domain. Allstate requests an Order (1) requiring Defendants to immediately retract and remove the false and defamatory statements from their websites and any and all social media accounts that they have access to, and (b) enjoining Defendants from making further defamatory statements about Allstate on any website or platform.

## COUNT II: COLORADO CONSUMER PROTECTION ACT
### (C.R.S. § 6-1-101, et seq.)

80.     Allstate repeats and incorporates herein by reference each of the allegations set forth above as if fully set forth herein.

81.     Defendants' false and defamatory statements, as described in detail above, constitute deceptive trade practices in violation of Colorado Law, C.R.S. § 6-1-105. Defendants' statements disparage Allstate's goods, services, and business by false and misleading representations of fact.

82.     Defendants knew that their factual assertions about Allstate were deceptive.

83.     Defendants published their defamatory statements in the course of their identity theft protection business. Defendant Cruz willfully posted the statements on his LinkedIn page as the founder, owner, operator, and representative of PIP PERSONAL IDENTITY PROTECTION, LLC.

84.     Defendants published false statements about Allstate for a commercial purpose. Defendants desire to sell products in competition with Allstate. The landing page of each of the defamatory websites contain links to an "application." Those "application" links re-direct to https://personal75.wearelegalshield.com/, a website that sells "protection for your family, your

30

business & your personal identity." Defendants defamed Allstate while simultaneously promoting their own insurance sales on LegalShield in order to garner more business on that platform.

85.     The false and defamatory statements appear on the two PIP PERSONAL IDENTITY PROTECTION, LLC websites, the PIP Facebook page, and the PIP Instagram page so that the company can derive substantial financial benefit. Defendants derived financial benefits through increased sales of services because they defamed Allstate.

86.     Defendants' statements occurred within the three-year statute of limitations period provided by C.R.S. § 6-1-115.

87.     Defendants' statements have harmed Allstate and will further impair the value of Allstate's name, reputation, brand, and goodwill without a permanent injunction.

88.     Allstate is entitled to permanent injunctive relief by way of

a.     Removal of all of Defendants' defamatory statements on Defendants' websites and social media accounts;

b.     Enjoining Defendants, and all those acting in concert with them, from repeating such statements; and

c.     Enjoining Defendants, and all those acting in concert with them, from engaging in further deceptive trade practices relating to Allstate.

89.     Allstate is also entitled to recover from Defendants its cost of litigation, including reasonable attorneys' fees, pursuant to C.R.S. § 6-1-113(2)

**PRAYER FOR RELIEF**

**WHEREFORE**, Allstate prays for judgment in its favor and against Defendants for:

a.     Compensatory damages in an amount to be determined at trial;

b.      Actual, consequential, and special damages, in an amount to be determined

at trial;

c.      Punitive damages;

d.      Reasonable and necessary attorneys' fees;

e.      Reasonable and necessary costs of the suit;

f.      Prejudgment and post-judgment interest at the highest lawful rates;

g.      Declarative and injunctive relief; and

h.      Such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues triable as of right to a jury.


Dated: April 5, 2024                        BENESCH, FRIEDLANDER, COPLAN &
                                            ARONOFF LLP

                                            */s/ J. Scott Humphrey*
                                            J. Scott Humphrey
                                            71 South Wacker Drive, Suite 1600
                                            Chicago, Illinois 60606-4637
                                            Telephone: (312) 212-4949
                                            Facsimile: (312) 767-9192
                                            Email: shumphrey@beneschlaw.com


                                            *Counsel for Plaintiff Allstate Insurance Company*