## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

ALLSTATE INSURANCE COMPANY,

                    Plaintiff,                       Civil Action No. 24-cv-00933

      v.

JOHN CRUZ and PIP PERSONAL
IDENTITY PROTECTION LLC,

                    Defendant.

---

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

Plaintiff Allstate Insurance Company ("Allstate") respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 65(a) and (b), for a Temporary Restraining Order and Preliminary Injunction against Defendants John Cruz ("Cruz") and PIP Personal Identity Protection LLC ("PIP") (collectively "Defendants"). Plaintiff respectfully requests that this Court order an injunction directing removal of the false, libelous, and defamatory online content published by Cruz. Plaintiff also requests an expedited hearing on this motion as the Court's calendar allows. The grounds for this motion are set forth fully herein.

### CERTIFICATE OF COMPLIANCE WITH D. COLO. L. CIV. R. 7.1

Pursuant to Local Rule 7.1(a), J. Scott Humphrey, counsel for Allstate, in good faith, emailed and called Defendants in an attempt to resolve the disputes stated in the instant Motion. Plaintiff's counsel informed Defendants of its intent to file a Complaint and Motion for Temporary Restraining Order and Preliminary Injunction in this matter.

Defendants responded to Mr. Humphrey via email on April 3, 2024, stating that Cruz would continue to make public statements about Allstate and that "[f]rom this day forward, all communications are public information… ***The only communications I would believe would possibly be kept confidential, would be if Allstate was wanting to settle all…***" Accordingly, Defendants signified that they intend to keep making false and defamatory statements about Allstate.

By nature of the email between Mr. Cruz and Mr. Humphrey, Defendants have notice of Plaintiff's Motion and Plaintiff's intent to seek a hearing on the Motion at the Court's earliest convenience. Given Defendants' unwillingness to meet and confer productively, Plaintiff's counsel has no choice but to bring this Motion for a Temporary Restraining Order and Preliminary Injunction.

## CERTIFICATE OF COMPLIANCE WITH D. COLO. L. CIV. R. 65.1

Pursuant to Local Rule 65.1, J. Scott Humphrey, counsel for Allstate, certifies that the following efforts were made by Plaintiff to provide the required notice and documents to Defendants: on April 8 and 10, Plaintiff attempted to serve copies of the Complaint and Summons via process server on Defendant Cruz in Longmont, Colorado, at 408 Widgeon Drive and 766 Martin Street Apt C113, respectively. On April 9 and 10, Plaintiff attempted to serve copies of the same via process server on Defendant PIP in Longmont, Colorado, at 1130 Francis St. Suite 7006 and 766 Martin Street Apt C113, respectively. None of these service attempts were successful. Plaintiff will continue attempting to serve Defendants, and will include copies of this Motion, and all related papers, with that service packet.

On April 10, Mr. Humphrey sent copies of all pleadings and papers filed in the action to date to Defendants via email to jcruz369@gmail.com, which is Mr. Cruz's known email address.[1] Mr. Humphrey will also send copies of the as-filed version of this Motion and all related filings to Mr. Cruz's email address on that same day it is filed.

## INTRODUCTION

After failing to produce a single shred of evidence in support of his claims against Allstate in court, Defendant Cruz has now taken to publicly disseminating those lies on the Internet. In his determination to ruin Allstate's reputation and unfairly compete with Allstate's insurance coverage business, Cruz has blatantly disregarded the Court's finding at summary judgment and has violated this Court's Protective Order by spreading confidential information on two Cruz-created websites that he has been promoting on various social media. Allstate has no choice but to file this Motion for a Temporary Restraining Order and Preliminary Injunction to immediately stop his damaging conduct by requesting Cruz to: (1) remove all defamatory statements and implications he has posted about Allstate online; and (2) refrain from further posting any defamatory and confidential information about Allstate anywhere, including online.

In 2020, Allstate filed a lawsuit against Cruz to stop his violations of the agreement that governed his relationship with Allstate. In 2021, Cruz filed a counterclaim against Allstate, alleging that Allstate sold its customers' personal information (date of birth, social security number, and drivers' license numbers) in exchange for gift cards. After several years of discovery—where no proof was developed to prove Cruz's counterclaims—the Court granted

---

[1] Mr. Cruz's April 3, 2024 email to Mr. Humphrey was sent from this email address.

summary judgment in favor of Allstate. The parties subsequently agreed to dismiss the remaining claims.

Bitter at the outcome of the lawsuit, unbeknownst to Allstate at the time, Cruz developed a company (PIP Personal Identity Protection) and two websites to spread far and wide the false statements from his counterclaim; namely, that Allstate sells its customers' personal information in exchange for gift cards. Using three social media accounts and two international news outlets, Cruz has repeatedly advertised his defamatory websites. Defendants' websites claim, for example, that "Allstate refers, shares and transfers identities to anyone," including a sex trafficker who impregnated a missing child and used stolen identities purchased from Allstate to continue his criminal activity; Allstate traded "an unwitting Allstate customer['s]" name, social security number, birthdate, and address for gift cards, which ultimately led to this individual's identity being stolen, "destroyed credit, unpaid debts, and a life in disarray;" and "a chilling tale of identity theft and its devastating consequences, a seemingly innocent transaction that Allstate turns into a tragic human trafficking scheme." (Exhibit A, Affidavit of David Barge at ¶¶ 16, 18). Both PIP websites also published confidential deposition excerpts and exhibits in violation of the Protective Order from the previous lawsuit.

Given Cruz's actions and his unequivocal position that he will not stop spreading his baseless lies, Allstate now seeks a Temporary Restraining Order and Preliminary Injunction. Allstate easily meets its burden for a Temporary Restraining Order and Preliminary Injunction. *First*, Allstate is likely to succeed on the merits of its claims for common law defamation and Colorado Consumer Protection Act (CRS § 6-1-101) ("CCPA") because (1) Cruz is knowingly publishing false and defamatory statements about Allstate without privilege; (2) Cruz published

4

the defamatory statements for a commercial purpose; (3) Cruz published the defamatory statements on two websites in which he purports to sell personal identity security services; and (4) Cruz is using his defamatory statements to denigrate Allstate while garnering more business for himself.

**Second,** absent injunctive relief, Allstate will suffer irreparable harm. Cruz's public statements have and will continue to damage Allstate's reputation and goodwill. Absent immediate injunctive relief, Cruz will continue to publish his damaging and false statements about Allstate. Cruz has stated as much in his email to counsel. Defendants' statements already have and will continue to generate great harm to Allstate's goodwill and customer relationships.

**Third,** the threatened harm to Allstate without injunctive relief greatly outweighs the harm, if any, to Cruz. If injunctive relief is granted, Cruz will only be required to stop spreading lies and to remove his damaging and defamatory content. Notably, Cruz would still be able to retain and advertise his PIP websites so long as he removes the defamatory information that is harming Allstate. Conversely, if a preliminary injunction is not granted, Allstate will continue to suffer the diminution of its goodwill and reputation. Each day that the information remains online, reputational damages are accruing to Allstate.

**Fourth**, the public interest is best served by entering a temporary restraining order against Defendants because they are spreading false statements to the public about a well-known and utilized company. The public deserves the truth. Defendants' harmful lies serve no First Amendment or competitive business purpose. Accordingly, injunctive relief in the form set forth in the Proposed Order attached hereto should be entered by this Court.

**FACTUAL BACKGROUND**

I.     **Allstate Won its Previous Litigation Against Cruz, Proving that Defendants Defamatory Statements are False**

Cruz is a former Allstate agent who sold Allstate products from 2011 to 2020. (*See* Exhibit A, Barge Aff. at ¶ 2). Under the terms of Cruz's Exclusive Agency Agreement (the "Agreement"), Cruz could not sell insurance products that compete with Allstate. (*Id.* at ¶ 3). In October 2019, an internal Allstate investigation revealed that Cruz was selling insurance products in competition with Allstate. (*Id.*). Cruz's actions were a clear violation of the terms of the Agreement (*Id.*). As a result, Allstate terminated Cruz's Agreement and ended its relationship with Cruz. (*Id.* at ¶ 4). Following his termination, Cruz continued to violate the surviving terms of the Agreement, including by soliciting business from Allstate customers. (*Id.*)

Given that Cruz's behavior was a blatant violation of the Agreement, Allstate filed suit against Cruz for breach of the Agreement and misappropriation of trade secrets on October 20, 2020 in the United States District Court for the District of Colorado ("First Action"). (*Id.* at ¶ 5). Several months later, Cruz filed a counterclaim against Allstate raising six counterclaims. (*Id.* at ¶ 6). To support his meritless and ultimately unsuccessful counterclaims, Cruz made several false statements against Allstate, including that Allstate sold personal customer information to third parties.

During the course of the First Action, the parties engaged in discovery, including written discovery and depositions. To facilitate the discovery process, the Court entered a Protective Order. (*Id.* at ¶ 8). Pursuant to the Protective Order, Confidential Information included "any document, electronically stored information, testimony, or response to a discovery request, including any extract, abstract, chart, summary, note, or copy made therefrom—not made available

6

to the public—and designated by one of the Parties in the manner provided below as containing: customer information, information that implicates common law and/or statutory privacy interests; competitive business information or information that a party believes is otherwise entitled to protection." (*See id.*).

Further, Paragraph 6 of the Protective Order prohibits the disclosure of Confidential Information to anyone other than attorneys working on the Case, the Parties, the Court, and other persons by written agreement. (*See id.*). Paragraph 9 of the Protective Order requires the return or destruction of Confidential Information upon the conclusion of the Case. (*See id.*).

Throughout the course of discovery, Allstate marked several documents and deposition transcripts Confidential pursuant to the terms of the Protective Order, including the deposition transcripts of "Buyer Depot,"[2] Richard Poduska, Elise Teague, Erika Lousberg, Jodi Lynch, Dino DiCarlo, and Rebecca Martens. (*Id.* at ¶ 9).

Ultimately, Allstate provided clear evidence of Cruz's misconduct. In contrast, Cruz did not produce a single piece of evidence to support his claims. Both parties moved for summary judgment on Allstate's breach of contract claims and all of Cruz's counterclaims. (*Id.* at ¶ 10). On April 14, 2023, Magistrate Judge Michael Hagerty recommended granting Allstate's motion and denying Cruz's motion. (*Id.*). On September 20, 2023, District Judge Nina Wang adopted the Recommendation and granted Allstate's motion for summary judgment on all of Cruz's

---

[2] Allstate notes that this partial deposition transcript is listed as "Buyer Depot" on Cruz's websites, but the deponent indicated therein is listed simply as "Buyer." The first page of the partial deposition transcript references the case number for the First Action.

counterclaims, denied Cruz's request for summary judgment on those counts, and granted Allstate's motion for summary judgment on its breach of contract claim as to liability. (*Id.* at ¶ 11).

Notably, in its summary judgment decision the Court highlighted Cruz's failure to produce *any* evidence in support of his counterclaims, stating that Cruz's claims relied "on conclusory and self-serving statements and failed to address Allstate's arguments or make the showings required by applicable law." (*See Id.*). Accordingly, Cruz knew (and still knows) that his false and defamatory statements about Allstate were untrue.

Despite making repeated threats to appeal the summary judgment ruling, on March 5, 2024, during a status conference with the Court, Cruz represented that he did not intend to appeal the Court's summary judgment ruing and that he was willing to dismiss his claims. (*Id.* at ¶ 12). Allstate then agreed to dismiss its remaining trade secrets claims against Cruz and the parties agreed to stipulate to a dismissal of all claims with prejudice. (*Id.*). Accordingly, on March 5, the Court dismissed all claims with prejudice and terminated the First Action. (*See Id.*). The Court also stated on the record that the only comment that either Cruz or Allstate could make about the case was that the parties "resolved [their] differences and [] agreed to [] dismiss the case." (*See Id.*)

## II. Defendants Are Defaming Allstate and Publishing Confidential Transcripts from the First Action in Violation of the Protective Order

Unbeknownst to Allstate, Cruz never intended to abide by the Court's Order or the parties' agreement. Instead, Cruz decided to engage in a smear campaign designed to spread lies about Allstate and tarnish its reputation. Specifically, just one month after the Court adopted Magistrate Judge Hagerty's recommendation, Cruz formed PIP. (*Id.* at ¶ 13). Cruz has used two PIP websites to perpetuate false and defamatory allegations that Allstate sells its customers' personal and

sensitive information for gift cards. These are the same allegations Cruz made and the court held were false in the First Action.

 In late March 2024, Allstate discovered that Cruz had created two websites for PIP: www.savemepip.com and www.pip-personalidentityprotection.com (the "websites"). (*Id.* at ¶ 14). The websites both advertise Cruz's business, PIP, and act as a vehicle for Cruz to spread defamatory statements about Allstate to an unknown and unlimited number of people.

    A.  <u>Defendants Are Defaming Allstate on Their Websites</u>

Scattered throughout the websites are various allegations that Allstate sells its customers' personal and sensitive information in exchange for gift cards. These allegation are false. And Cruz knows that these allegations are false.

Take one example. The websites state that they can help "to protect the identity of anyone who gave Allstate Insurance Company their personal information. Name, Social Security Number, Date of Birth, Drivers' License. Anyone who gave their personal information to any of Allstate subsidiary companies." (*Id.* at ¶ 14). This claim is false.

Take another example. The websites allege that Allstate requires its representative to follow three rules: "(1) use Allstate electronic communications, email, phone, fax. Used to transfer your personal information; (2) representatives are "not allowed to report to any government agency"; and (3) "the only form of payment allowed to be paid to Allstate representatives." None of these statements have any basis in reality. (*Id.* at ¶ 15).

Even more disturbing , Defendants share two animated videos on their websites linking Allstate to human trafficking and rape. (*Id.* at ¶ 16). The first video falsely states: "a chilling tale of identity theft and its devastating consequences, a seemingly innocent transaction that Allstate

turns into a tragic human trafficking scheme." (*Id.*). The video claims that nefarious actors can purchase "personal information (names, addresses, social security numbers, and driver's license details" with "gift cards." (*Id.*). The narrative further claims:

> "a father in dire need seeking asylum for his wife (47) and daughter (13) finds his hopes shattered… His wife and daughter were beaten, raped, murdered. Only through the purchased identities were they identified; their lives taken for a few thousand dollars. As authorities trace back confronting a man who claims missed family, the truth emerges. Allstate's negligence in safeguarding customers' data, refusing accountability, is a betrayal of trust. Their silence leaves lives shattered. A stark reminder of the grave consequences of unchecked information sharing."

(*Id.*). In another video, Defendants again link Allstate to human trafficking and rape, falsely claiming that "Allstate refers, shares and transfers identities to anyone," including a sex trafficker who impregnated a missing child and used stolen identities purchased from Allstate to continue his criminal activity. (*Id.*). These claims are false and defamatory. Allstate does not sell customers' sensitive personal information. Allstate has also never sold personal information leading to human trafficking and rape.

There are at least three additional videos on the websites that make false statements about Allstate. One claims that Allstate traded "an unwitting Allstate customer['s]" name, social security number, birthdate, and address for gift cards, which ultimately led to this individual's identity being stolen, "destroyed credit, unpaid debts, and a life in disarray." (*Id.* at ¶ 18). These claims are false and defamatory. Allstate does not sell customers' sensitive personal information. Allstate has never sold personal information leading to a customer's financial ruin.

Another video claims Allstate sold a customer's personal information after that customer shared his "personal information on Allstate's site" to secure an Allstate warranty for a washer and dryer he had purchased. (*Id.* at ¶ 19). The "sold" information resulted in the customer "arrested for

three major speeding tickets." (*Id.*). The video concludes by stating "*Allstate's careless data handling shattered trust. Sadly, Allstate refers, shares, and transfers your identity to anyone paid with gift cards. This is what can happen to you when getting insurance from Allstate. Keep safe. Keep Happy.*" (*Id.*). These claims are false and defamatory. Allstate does not refer, share, or transfer customers' sensitive personal information to anyone in exchange for gift cards.

On both of his PIP websites, Defendant falsely states that "Allstate representatives have stated under oath in Federal Court, Allstate representatives are allowed to refer/share/transfer your personal information to anyone." (*Id.* at ¶ 21). For proof, Defendants link the readers to confidential deposition excerpts from depositions taken in the First Action. (*See id.*). In addition to being a clear violation of the Protective Order, Defendants strategically omit relevant portions of the deposition transcripts to paint a false picture of the testimony given at the depositions. To do so is false and defamatory. Defendants knew that Allstate executives and others did not testify in the First Action that Allstate representatives are allowed to refer, share, or otherwise transfer customers' sensitive personal information.

B.   <u>Defendants Are Defaming Allstate on at Least Four Social Media Websites</u>

Defendants have further spread their defamatory lies about Allstate through the power of social media. Cruz has taken to *at least* LinkedIn, Facebook, Instagram, and YouTube to further disparage Allstate's reputation. (*Id.* at ¶ 22). On each of these platforms, Cruz has posted the above-mentioned videos, linked to his PIP websites, and has continued to claim that Allstate sells its customers' sensitive personal financial information for gift cards. (*Id.*) Allstate has uncovered at least eight defamatory posts on LinkedIn, three posts on Facebook, four posts on Instagram, and one video on YouTube in which Cruz explicitly makes false statements about Allstate. Allstate

has uncovered numerous other posts on these social media websites that provide hyperlinks to his defamatory PIP websites. (*Id.*) All of Defendants' social media posts have occurred in the span of only two months—since February 2024. (*Id.* at ¶ 23).

C.   Defendants Are Advertising Their Defamatory Websites About Allstate on CNN and MSNBC

In an effort to spread his defamatory messaging as far as possible, Cruz has advertised his defamatory PIP websites on MSNBC and CNN. In March 2024, Cruz purchased advertisement space through Coventry First, LLC, resulting in advertising for one of his websites being aired on MSNBC in the Chicago market at 11:54 a.m. local time on Thursday, March 28, 2024. (*Id.* at ¶ 24). That advertisement directed viewers to https://savemepip.com/. (*Id.*). That same advertisement aired on CNN's local affiliate in the Chicago market around the same time.

III.   **Defendants' Statements About Allstate Are False and Defamatory and Were Published with Actual Malice.**

Each of Defendants' false and defamatory statements about Allstate are premised on the same fundamental claim: Allstate sells its customers' personal information, including their name, social security number, date of birth, and driver's license in exchange for gift cards. This claim is unequivocally false. Defendants knew this claim was false for at least three reasons.

***First***, Allstate's publicly available privacy center website[3] explicitly states that Allstate does not sell its customers' personal information. (The website states, "As a simple fact, we do not

---

[3] *See* https://www.allstate.com/privacy-center; *see also* Allstate's privacy statement, *available at* https://www.allstate.com/privacy-center/aic-privacy-statement for details about Allstate's privacy practices including an explanation of the Do Not Sell or Share My Personal Information link required under California law for consumers to opt-out of targeted advertising.

sell your personal information."). Defendants were aware of this publicly available statement and chose to ignore it when they published defamatory claims about Allstate.

*Second*, the First Action—to which Cruz was a party—unequivocally showed that there is no evidence to support Defendants' claim. The court in the First Action recognized the careful steps Allstate takes to protect its customers' information, stating "[the] uncontroverted record evidence shows that [Allstate] takes steps to protect" the names and contact information of its customers, "including educating" its agents "about protecting confidential information, keeping its databases password protected and only accessible on a need to know basis, having its [agents] and the [agents'] employees sign agreements which have confidentiality obligations, and putting in place safeguards to alert Allstate if confidential information is being improperly sent outside the systems." (*Allstate v. Cruz,* ECF No. 221 at 18). The court additionally found that, "[a]ny sharing of customer information, including contact information, with a referral to an outside agency, is only done with the customer's consent." (*Id.*).

*Third,* Defendants had no logical reason to believe that Allstate engages in "careless data handling," engages in a "human trafficking scheme," "is negligent in safeguarding customers' data," and "refuse[s] accountability with its "unchecked information sharing." (Compl. at ¶¶ 38–39). Each of these claims is unquestionably false and not based in reality. Allstate abides by all state and federal laws regarding payments to its Agents. The only basis Defendants provide for these claims are excerpted portions of deposition transcripts from the First Action in violation of the Protective Order in that matter. By taking those confidential deposition transcripts out of context, Defendants are using them to make defamatory implications about Allstate. Despite

knowing all of its statements about Allstate are false, Defendants chose to publish them on multiple platforms anyway. Defendants did this deliberately to destroy Allstate's reputation.

## IV.   Allstate Has Suffered and Will Continue to Suffer Irreparable Harm So Long As the Defamatory Statements Remain Available Online

Defendants' websites, advertisements, and social media posts have the potential to reach an unlimited number of people on the Internet. Each time an individual reads or hears the false statements Cruz is spreading, Allstate's reputation is harmed. Each day that passes while the defamatory statements about Allstate remain available online, increases Allstate's damages against Defendants. Allstate's goodwill and reputation remain damaged and at risk of further and continual damage. Allstate's goodwill and reputation cannot be easily corrected or compensated through monetary damages. Indeed, the only viable solution is a court order directing Defendants to remove the defamatory online content they published and refrain from posting additional defamatory content about Allstate.

## <u>LEGAL STANDARD</u>

A temporary restraining order and/or preliminary injunction is appropriate where a party demonstrates, by verified complaint or affidavit, that it will suffer "immediate and irreparable injury, loss, or damage" if the defendant's conduct is not enjoined. Fed. R. Civ. P. 65(b). To prevail on a motion for a temporary restraining order or preliminary injunction, Allstate must demonstrate (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir. 1980). Allstate easily satisfies this standard.

## <u>ARGUMENT</u>

As a threshold matter, the relief sought by Allstate is not "disfavored" injunctive relief which exacts a heavier burden on movants. *Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1255 (D. Colo. 2005).

**First,** enjoining Defendants from publishing disparaging and defamatory statements about Allstate and from disclosing Allstate confidential information would not alter the status quo but would instead restore the "last uncontested status between the parties which proceeded the controversy,"—that is, before Defendants violated court orders from the prior litigation and published defamatory statement about Allstate. *See Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.*, No. 07-2324, 2008 WL 2185882, at *13 (D. Colo. May 23, 2008).

**Second**, Allstate's requested relief is prohibitory, not mandatory, as it would only require Cruz to stop violating court orders and statutory and common law, and it would entail "no more supervision than any other injunction" ordered by the Court. *Doubleclick*, 402 F. Supp. 2d at 1256 (preliminary injunction prohibitory where defendant ordered to refrain from engaging in violative conduct). Although Allstate also requests that Cruz take down all defamatory statements from his website and social media, this would be a one-time action that would not require the court's "ongoing supervision." *See id.*

**Third**, because Allstate also seeks monetary damages in the underlying action, a grant of the relief requested herein would not afford Allstate "substantially all the relief possible at trial." *Id.; Xantrex*, 2008 WL 2185882 at *14 (standard test appropriate where movant was not "seeking all of the relief demanded in its Complaint").

Accordingly, application of the standard four-part analysis is proper. Allstate satisfies each of the following factors because: (1) Allstate is likely to succeed on the merits of its claims; (2) Allstate will be irreparably harmed if Cruz is not enjoined from publishing false and defamatory statements about Allstate; (3) the serious and irreparable injury that Allstate faces greatly outweighs any potential harm an injunction would cause Cruz; and (4) a temporary restraining order or preliminary injunction is not adverse to the public's interest.

## I.       Allstate Will Likely Succeed on the Merits of Its Claims.

Allstate seeks injunctive relief against Cruz based on Cruz's defamation of Allstate (Count I) and his violation of Colorado's Consumer Protection Act (Count II). To demonstrate a likelihood of success on the merits, a plaintiff must "present 'a prima facie case showing a reasonable probability that [it] will ultimately be entitled to the relief sought.'" *Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.,* 320 F.3d 1081, 1100 (10th Cir. 2003). As set forth herein, Allstate can demonstrate a likelihood of success on these claims.

### A.       Allstate Will Likely Succeed on Its Defamation Claim

The elements of a claim for defamation in Colorado are "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *Williams v. Dist. Court*, 866 P.2d 908, 911 n.4 (Colo. 1993). Allstate is likely to succeed on all four elements.

#### i.       *Element 1: Defendants Made Defamatory Statements About Allstate*

***First***, Defendants made statements concerning Allstate that were defamatory per se because they claimed that Allstate committed a crime by sharing its customers' sensitive personal

information without their permission in exchange for gift cards. That claim assumes that Allstate is violating state and/or federal laws regarding data privacy and protection. Whether or not a statement is defamatory per se is a question of law. *Miles v. Nat'l Enquirer, Inc.*, 38 F. Supp. 2d 1226, 1228–29 (D. Colo. 1999). "To decide whether a statement is defamatory per se, the Court must examine the statement on its own, without the aid of inducements, colloquialisms, innuendos, and explanatory circumstances." *Id.* "A statement may be considered defamatory per se if it is specifically directed at the person claiming injury and, on its face and without extrinsic proof, it is unmistakably recognized as injurious." *Keohane v. Wilkerson*, 859 P.2d 291, 301 (Colo. App. 1993), *aff'd sub nom. Keohane v. Stewart*, 882 P.2d 1293 (Colo. 1994). There are four categories of statements that have historically been considered defamatory per se: (1) imputation of crime, (2) loathsome disease, (3) defamation affecting business, and (4) unchastity. *See id.*

Here, Defendants' statements about Allstate are defamatory per se because they affect Allstate's business and accuse Allstate of criminal activity. *See Keohane,* 859 P.2d at 301–302 (statements that judge had accepted bribe or had used drugs or was engaged in improper conduct in office were slander per se); *Miles,* 38 F. Supp. 2d at 1129 (statements that plaintiff was a pedophile and sex offender were defamatory per se). By claiming that Allstate was selling its customers' sensitive information for gift cards, Defendants impute a want of integrity and lack of integrity by Allstate in conducting its profession. By claiming that Allstate sold its customers' sensitive information to criminals, Defendants accuse Allstate of committing a crime. By claiming that Allstate enabled schemes of human trafficking, sex trafficking, and rape through selling sensitive customer information, Defendants further accuse Allstate of committing crimes. These statements were unmistakenly directed at Allstate and injurious on their face.

ii.     *Element 2: Defendants Published Their Defamatory Statements About Allstate*

**Second**, Defendants publicly posted defamatory statements about Allstate on two Internet websites in the form of text and video. Defendants posted defamatory statements about Allstate on social media, too. Defendants posted their defamatory content on (at least) LinkedIn, Facebook, Instagram, and YouTube. They were also advertised on two national news websites. This satisfies the publication element. *See e.g.*, *Muhaisen v. Does 1 Through 100*, 2017 WL 4012132, at *1 (D. Colo. Sept. 12, 2017) (YouTube videos met the publication element of a defamation claim and granting a TRO on a defamation claim).

iii.     *Element 3: Defendants Acted with Actual Malice in Defaming Allstate*

**Third**, Defendants published false and defamatory statements about Allstate with actual malice. The requisite standard of intent depends on the status of the plaintiff and whether the matter is of public concern. Whether or not Allstate is a private plaintiff, and whether the matter involved is of public concern, is a matter of law for the court. *Zimmerman v. Bd. of Publications of Christian Reformed Church, Inc*., 598 F. Supp. 1002, 1012 (D. Colo. 1984). For the purpose of this motion, Allstate maintains that it is likely to succeed even under the highest standard of intent, which is actual malice.[4]

Under the *New York Times* definition, actual malice means knowledge that the statements were false, or with reckless disregard of whether they were true or false. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). "Actual malice can be shown if the defendant entertained serious doubts as to the truth of the statement or acted with a high degree of awareness of its probable

---

[4] Allstate reserves its rights to argue its status as a private figure on a matter of private concern.

falsity [] or if the speaker willfully chose not to learn the truth." *Coomer v. Lindell,* 2023 WL 2528624, at *6 (D. Colo. Mar. 15, 2023) (internal quotations omitted). "The motivation behind a publication is a factor to consider in determining whether the evidence shows a publisher acted with actual malice." *Spacecon Specialty Contractors, LLC v. Bensinger,* 713 F.3d 1028, 1043 (10th Cir. 2013).

Here, Defendants knew their claims about Allstate were false when they published them for four reasons. First, there are public court documents from the First Action—litigation that Cruz himself was a party to—explaining that Defendants' claims about Allstate are false.

Second, there are publicly available websites showing that Defendants' claims about Allstate are false.

Third, Defendants do not have any basis to support their fantastical claims. To the extent Defendants attempt to claim that confidential deposition transcripts from the First Action support their claims, a simple review of the transcripts posted online by Defendants reveals that at no point in time did any of the deponents make any comments that even remotely support Defendants' lies. In addition, Defendants public disclosure of the transcripts is a clear violation of the protective order in the First Action.

Fourth, Defendants have a motive to harm Allstate because of the First Action, and because Cruz is competing with Allstate for business. Defendants' willful disregard of contrary evidence, lack of evidence to support their claims, and motive to defame Allstate sufficiently demonstrates actual malice. *See Coomer*, 2023 WL 2528624, at *7 (finding plausible allegation of actual malice where defendants "disregarded reliable sources refuting their claims" and continued to publish false statements about Plaintiff despite contrary information); *see also Kuhn v. Trib.-Republican*

*Pub. Co.*, 637 P.2d 315, 319 (Colo. 1981) (finding possibility of actual malice where defendant had no basis to support their statements about plaintiff).

Finally, the defamatory statements have already caused damage to Allstate's reputation and business and will continue to do so as long as they are available online. Private plaintiffs need not prove actual damages for defamation per se. *Denver Pub. Co. v. Bueno*, 54 P.3d 893, 900 (Colo. 2002); *Gertz v. Robert Welch*, 418 U.S. 323 (1974). But even if Allstate were required to prove damages, it would prevail. Allstate is a publicly traded company. It enjoys a strong reputation with its customers and the public at large. It has invested millions of dollars in advertising and brand awareness. Allstate's reputation and brand are among its most valuable assets. The false statements on Defendants' websites, which Defendants are also promoting on social media, are actively harming Allstate's reputation and brand. The ongoing harm from Defendants' publicly available defamatory statements is difficult to measure because it proliferates as it gets picked up by other users on social media and online. This harm includes, but is not limited to, reputational harm and loss of customer goodwill.

Because Allstate has shown a probability of establishing each element of defamation, Allstate has demonstrated a likelihood of success on the merits for its defamation claim. *See Muhaisen v. Does 1 Through 100*, 2017 WL 4012132, at *1 (D. Colo. Sept. 12, 2017) (finding a likelihood of success on the merits of a defamation claim to warrant a temporary restraining order). Allstate is therefore eligible for a temporary restraining order and preliminary injunction against Defendants.

B.      Allstate Will Likely Succeed on Its Deceptive Trade Practices Act Claim

Allstate is also eligible for a temporary restraining order and preliminary injunction because it is likely to succeed on the merits of its second claim: Deceptive Trade Practices under the CCPA. To prove a private cause of action under the CCPA, a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003). Allstate is likely to succeed on each of these elements.

> i.      *Defendants Engaged in an Unfair or Deceptive Trade Practice*

***First***, Cruz engaged in an unfair or deceptive trade practice. According to C.R.S.A. § 6-1-105(1)(h), "A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the Person… *Disparages the goods, services, property, or business of another by false or misleading representation of fact*." (emphasis added). Cruz is disparaging Allstate's business by falsely claiming on two websites and multiple social media forums that Allstate wrongfully sells its customers' sensitive personal information in furtherance of criminal activity. *See Francis v. Mead Johnson & Co.*, 2010 WL 5313540, at * (D. Colo. Dec. 17, 2010) (noting that the Colorado Supreme Court broadly construes the statutory language of CCPA's false representation provision).

ii.      *Defendants Acted in the Course of Their Insurance Business*

**Second**, Defendants are publishing their false statements and misrepresentations about Allstate in the course of promoting their own competing business. For example, Cruz has willfully posted misleading and disparaging statements about Allstate on his LinkedIn as the founder, owner, operator, and representative of PIP PERSONAL IDENTITY PROTECTION, LLC. Additionally, Defendants' websites contain links to "applications" that redirect users to another insurance platform where Defendants can sell insurance: LegalShield. Defendants are publishing their misrepresentations about Allstate in furtherance of their business interests and in the course of their competing business. *Otter Prods., LLC v. Fisch Enter., Inc.*, 2019 WL 7290937, at *6–7 (D. Colo. Oct. 3, 2019) (Defendant's actions were "in the course of its business" when listed as "part of" the product listings advertised to consumers).

iii.     *Defendants' Misrepresentations About Allstate Significantly Impact the Public*

**Third**, Defendants' misrepresentations about Allstate's business have already and will continue to significantly impact the public. To determine whether a challenged practice "significantly impacts the public," Colorado courts consider "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1149 (10th Cir. 2009). The Colorado Supreme Court has found that misrepresentations "directed to the market generally, taking the form of widespread advertisement and deception of actual and prospective purchasers" significantly impact the public for purposes of the CCPA. *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).

Defendants' misrepresentations about Allstate on their two websites were directed to the market generally, as they were widely disseminated to all corners of the internet. Defendants posted misrepresentations about Allstate on two websites and three social media platforms. These misrepresentations were further disseminated to the public by way of advertisements on CNN and MSNBC. Accordingly, Defendant's widespread misrepresentations significantly impacted the public.

### iv.    *Allstate Has and Will Continue to Suffer Injury In Fact*

**Fourth**, Allstate has already suffered injury in fact to its reputation, which is a legally protected interest. "Under longstanding American law, a person is injured when a defamatory statement 'that would subject him to hatred, contempt, or ridicule' is published to a third party." *TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13 (1990)). Allstate has already suffered an injury in fact to its reputation by Defendants' continued publications of misrepresentations about Allstate's business. Allstate's harm will not stop until Defendants remove the defamatory and disparaging information about Allstate on the websites and social media platforms.

### v.    *Defendants' Statements Caused Allstate's Harm*

**Fifth**, Defendants' disparaging statements about Allstate have already and will continue to cause reputational harm. As explained in section IA, *supra*, the false statements on Defendants' websites, which they also promote on social media, are causing ham to Allstate's reputation and brand.

## II.     Allstate Will Suffer Irreparable Harm Absent Injunctive Relief.

If Defendants' conduct is not enjoined, Allstate will suffer irreparable harm to its longstanding and valuable customer relationships, goodwill, reputation, and legitimate business interests.

The most important prerequisite for obtaining injunctive relief is a demonstration of irreparable harm. *Bray v. QFA Royalties LLC*, 486 F. Supp. 2d 1237, 1247 (D. Colo. 2007). "[A] plaintiff satisfies the irreparable harm requirement by demonstrating 'a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.'" *RoDa Drilling Co. v. Siegal,* 552 F.3d 1203, 1210 (10th Cir. 2009) (*quoting Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Schrier v. Univ. Of Co.,* 427 F.3d 1253, 1267 (10th Cir. 2005). The injury must be imminent, and there must be a clear and present need for equitable relief to prevent irreparable harm. *Id.*

Here, immediate injunctive relief is necessary because Defendants' false statements have already and will continue to harm Allstate. There can be no question that if the statements on Defendants' websites are not removed, the statements will continue to irreparably harm Allstate's reputation and goodwill. "Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm." *Cent. Bancorp, Inc. v. Cent. Bancompany, Inc.,* 385 F. Supp. 3d 1122, 1144 (D. Colo. 2019).

Allstate's reputation is one of its most valuable assets, which it has spent considerable time and resources cultivating. Allstate cannot be made whole by monetary damages alone. *See Keohane v. Stewart, 882 P.2d 1293,* 1298 (Colo. 1994) ("[D]efamatory statements are so egregious

and intolerable because the statement destroys an individual's reputation: a characteristic which cannot be bought, and one that, once lost, is extremely difficult to restore.").

Notably, Cruz is scheduled as a criminal defendant in a trial currently set for April 29, 2024. The State of Colorado accuses Cruz of sixteen counts relating to theft, forgery, and identity theft. Should Cruz be convicted and incarcerated, he would no longer have access to the websites, and as a result, Allstate may not be able to shut down the websites. Consequently, time is of the essence to enjoin Defendants and their defamatory conduct.

### III.    The Balance of Hardships Weighs Against Defendants and in Favor of Injunctive Relief.

The balance of the equities also decidedly falls in Allstate's favor. The harm Defendants would suffer (if any) if a temporary restraining order and preliminary injunction issues, is substantially less than the harm Allstate will suffer if the court does not grant the requested relief.

Allstate's requested relief requires Defendants to remove the false and defamatory statements about Allstate from the Internet and prevent Defendants from further defaming Allstate and disclosing its confidential information. These are obligations to which Cruz has already either explicitly agreed to under the First Action's Protective Order or implicitly agreed to leading up to the March 5, 2024 Dismissal Order. In signing the First Action's Protective Order, Cruz agreed to not disclose Allstate confidential information. Likewise, in agreeing to a "voluntary dismissal" of his case with prejudice, Cruz agreed to stop making allegations about Allstate sharing personal customer information. Cruz's "voluntary dismissal" came after the Court granted Allstate summary judgment on all of Cruz's claims against Allstate and, in doing so, found that Cruz had put forth no evidence to support his claims, including that Allstate shares personal customer information with third parties. Because Cruz knowingly agreed to the Protective Order and to a

voluntary dismissal of his claims against Allstate—after the Court ruled there was no evidence to support the claims—ordering Cruz to comply with such orders will not result in any hardship. *See Port-a-Pour, Inc. v. Peak Innovations, Inc.,* 49 F. Supp. 3d 841, 868 (D. Colo. 2014) (finding no hardship where preliminary injunction would prevent defendants from doing what they were not authorized to do).

Moreover, this Court has recognized, in the context of balancing equities, "Defendants have no legitimate interest in publishing statements that are made with reckless disregard for the truth and that have the primary purpose of damaging plaintiff's reputation." *Muhaisen v. Does 1 Through 100,* 2017 WL 4012132, at *3 (D. Colo. Sept. 12, 2017). Indeed, "there is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340 (1974). Because Defendants knowingly published false statements about Allstate across the Internet, Defendants have no First Amendment protections to their posts.

Allstate, on the other hand, will suffer irreparable harm to its reputation and business if Defendants' defamatory statements remain accessible to the public or if Defendants are permitted to continue publishing defamatory statements about Allstate. In *Muhaisen*, the Court determined the balance of the equities favored the plaintiff where the plaintiff would be harmed if the defendant were allowed to continue publishing defamatory statements. *Muhaisen,* 2017 WL 4012132, at *3. Here, too, the equities substantially, and decidedly, weigh in favor of granting injunctive relief.

## IV.     The Public Interest Will Be Served by Enjoining Defendants From Further Defaming and Disparaging Allstate.

Finally, the public interest will be served by granting Allstate's request for injunctive relief. While the public has an interest in receiving truthful and accurate information, the public has no

interest in false information. The Supreme Court has held that "[n]either the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues." *Gertz*, 418 U.S. at 340 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). This is especially so when false information is used as a fearmongering tactic. Defendants are exploiting false information about Allstate in order to instill fear and paranoia among consumers about their personal information so that they sign up for Defendants' identity protection business. Defendants' lies are not only harmful to Allstate but also to the public. Therefore, both removing false statements about Allstate from the Internet and enjoining Defendants from continuing to make false and disparaging statements about Allstate does not go against the public interest; if anything, it advances the public interest in combatting disinformation.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Allstate respectfully requests that this Court grant its Motion for a Temporary Restraining Order and Preliminary Injunction and enter the proposed order accompanying this motion.

Dated: April 12, 2024

BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP

*/s/ J. Scott Humphrey*
J. Scott Humphrey
Kate Watson Moss (*admission pending*)
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone: (312) 212-4949
Facsimile: (312) 767-9192
Email: shumphrey@beneschlaw.com
Email: kwatsonmoss@beneschlaw.com


*Counsel for Plaintiff Allstate Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on April 12, 2024, and pursuant to Local Rule 65.1(a)(1), he caused a true and correct copy of the foregoing Plaintiff's Motion for a Temporary Restraining Order, along with all corresponding documents to be presented to the Court at hearing, to be served via email and U.S. Mail upon the following:

PIP Personal Identity Protection LLC
1130 Francis St., Suite 7006
Longmont, CO 80501
sales@personalidentity.info

John Cruz
408 Widgeon Drive
Longmont, CO 80603
jcruz369@gmail.com

/s/ *J. Scott Humphrey*
J. Scott Humphrey