**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 24-cv-00933-NYW-CYC

ALLSTATE INSURANCE COMPANY,

     Plaintiffs,

v.

JOHN CRUZ, and
PIP PERSONAL IDENTITY PROTECTION LLC,

     Defendants.

---

**ORDER ON MOTION FOR DEFAULT JUDGMENT**

---

This matter comes before the Court on Plaintiff Allstate Insurance Company's ("Plaintiff" or "Allstate") Motion for Default Judgment Against Defendant PIP Personal Identity Protection LLC ("Motion"). [Doc. 120, filed January 23, 2025]. Defendant PIP Personal Identity Protection LLC ("PIP") has not responded to the Motion,[1] and the time to do so has elapsed. The Court finds that oral argument would not materially assist in the disposition of the Motion. Upon review of the Motion and the related briefing, the applicable case law, and the entire docket, Plaintiff's Motion is respectfully **GRANTED in part** and **DENIED in part**.

---

[1] Defendant John Cruz filed a motion on PIP's behalf, seeking additional time to respond to the Motion. [Doc. 121]. But Mr. Cruz is not an attorney, and a limited liability company cannot proceed pro se or appear through a non-attorney corporate officer. *Riviera Drilling & Exploration Co. v. Gunnison Energy Corp.*, 412 F. App'x 89, 92 (10th Cir. 2011); *Harrison v. Watahoyas*, LLC, 253 F.3d 552, 556 (10th Cir. 2001). The Court advised Mr. Cruz as much, and struck the filing. *See* [Doc. 122].

**BACKGROUND**

The Court draws the following facts from Allstate's Complaint, [Doc. 1], and the exhibits attached to the Motion.  In deciding the Motion, the Court accepts these facts as undisputed.  *See Mrs. Condies Salad Co. v. Colo. Blue Ribbon Foods, LLC*, 858 F. Supp. 2d 1212, 1217 (D. Colo. 2012).  The Court has also previously set out the background of this case in detail, *see* [Doc. 29 at 1–10], and reiterates these facts only to the extent necessary to decide the Motion.

Defendant John Cruz ("Mr. Cruz") worked as an Allstate exclusive agent from 2011 to 2020. [Doc. 1 at ¶ 20].  In late 2020, Allstate sued Mr. Cruz for allegedly breaching his exclusive agency agreement and appropriating Allstate customers' information to support a competing business.  *See Allstate Ins. Co. v. Cruz* ("*Cruz I*")*,* No. 20-cv-03139-NYW-MEH (D. Colo.).  In September 2023, the Court granted summary judgment in Allstate's favor on its breach of contract claim and all of Mr. Cruz's counterclaims.  *See Allstate Ins. Co. v. Cruz*, No. 20-cv-03139-NYW-MEH, 2023 WL 6147077, at *4 (D. Colo. Sept. 20, 2023).  Shortly after the summary judgment ruling, PIP was formed as a Colorado limited liability company.  [Doc. 120-1].  Allstate alleges that Mr. Cruz and his wife, Denise Cruz, are the only two members of PIP.  [Doc. 1 at ¶ 15].

In March 2024, Allstate and Mr. Cruz agreed to dismiss *Cruz I* with prejudice.  *Cruz I*, Dkt. No. 269.  Allstate filed this action a month later.  *See* [Doc. 1, filed April 5, 2024].  Allstate alleges that Mr. Cruz and PIP have launched a "smear campaign" based on "false claims that Allstate is selling its customers' sensitive information to, among other things, further criminal activity."  [*Id.* at ¶ 1].  In conjunction with the Motion, Allstate has identified 40 alleged defamatory statements that Defendants have published across two websites;

2

several social media platforms, including Facebook, Instagram, LinkedIn, and YouTube; and advertisements and appearances on local television stations. *See* [Doc. 120-9 (compiling alleged defamatory statements)]; *see also* [Doc. 1 at ¶¶ 30–48, Doc. 62-8; Doc. 62-9; Doc. 62-10]. Individual statements vary, but all relate to the same central claim that Allstate sells or shares its customers' personal information in exchange for gift cards and, in doing so, facilitates identity theft and human trafficking. *See, e.g.*, [Doc. 1 at ¶¶ 37–38].

According to Allstate, Mr. Cruz is primarily motivated by "spite and vengeance." [*Id.* at ¶ 10]. He seeks "vengeance" against Allstate after Allstate obtained a favorable summary judgment ruling in *Cruz I*. [*Id.* at ¶ 66]. But Mr. Cruz also stands to benefit financially from tarnishing Allstate's commercial reputation. [*Id.* at ¶ 67]. PIP's websites promote an identity protection service and include links to non-party LegalShield, an identity protection service. [*Id.* at ¶¶ 34, 67]. Allstate alleges that Mr. Cruz and PIP earn a commission on every LegalShield plan sold through PIP's websites. [*Id.*].

Allstate brings two claims: one for defamation and another for deceptive trade practices under the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-105, -113. [Doc. 1 at ¶¶ 71–89]. Since initiating this lawsuit, Allstate has sought both preliminary and permanent injunctive relief. *See* [Doc. 8; Doc. 62]. The Court denied both motions. [Doc. 29; Doc. 73]. But although Mr. Cruz has appeared in this lawsuit, *see, e.g.*, [Doc. 60], PIP has failed to appear or otherwise defend through counsel. Accordingly, pursuant to Federal Rule of Civil Procedure 55(a), Allstate moved for and obtained an entry of default as to PIP. *See* [Doc. 109; Doc. 110]. Allstate now moves for a default judgment against PIP on both of its claims, seeking attorney's fees, costs, and

permanent injunctive relief.  [Doc. 120].

## LEGAL STANDARD

### I.    Rule 55

Pursuant to Federal Rule of Civil Procedure 55, a party may apply to the Court for a default judgment after a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend against the action.  Fed. R. Civ. P. 55(a), (b)(2). But there is no right to a default judgment, and "the entry of a default judgment is committed to the sound discretion of the district court."  *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016).

Determining whether to enter default judgment requires the Court to first resolve whether it has jurisdiction, and if it does, whether the well-pleaded factual allegations in the Complaint and any attendant affidavits or exhibits support judgment on the claims against the defendants.  *See Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010); *Magic Carpet Ski Lifts, Inc. v. S&A Co., Ltd.*, No. 14-cv-02133-REB-KLM, 2015 WL 4237950, at *5 (D. Colo. June 8, 2015) ("There must be a sufficient basis in the pleadings for the judgment entered." (quotation omitted)).  If the Court lacks jurisdiction—either subject matter over the action or personal over the defendant—default judgment cannot enter. *See Dennis Garber & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997).

By its default, PIP admits Plaintiff's well-pleaded allegations of fact, is precluded from challenging those facts by the judgment, and is barred from contesting on appeal the facts established.  *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1093 (D. Colo. 2014); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the

amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The facts alleged in the Complaint which are deemed admitted upon default may form the basis for the Court's entry of a default judgment. *See, e.g.*, *Salba Corp. v. X Factor Holdings, LLC*, No. 12-cv-01306-REB-KLM, 2015 WL 5676690, at *1 (D. Colo. Sept. 28, 2015). A court may also consider undisputed facts set forth in affidavits and exhibits. *Mrs. Condies*, 858 F. Supp. 2d at 1217

But a party in default does not admit conclusions of law, only allegations of fact, and so those allegations must be enough to establish substantive liability. *See Bixler*, 596 F.3d at 762; *Big O Tires, LLC v. C&S Tires, Inc.*, No. 16-cv-00725-MSK-NYW, 2017 WL 2263079, at *3 (D. Colo. May 24, 2017) (citing 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)). And before granting injunctive relief, the Court must ensure that the requested injunction complies with Federal Rule of Civil Procedure 65(d), relevant equitable principles, and any other applicable law. *See, e.g.*, *Acosta v. Finishing Pros., LLC*, No. 18-cv-00978-RPM-NYW, 2018 WL 6603641, at *2–3 (D. Colo. Nov. 20, 2018), *recommendation adopted by* 2019 WL 13214043 (D. Colo. Jan. 17, 2019).

## II.    Injunctive Relief

To obtain a permanent injunction, a plaintiff must demonstrate "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (quotation omitted). District courts enjoy "necessarily broad" discretion in determining whether to grant a permanent

injunction. *FTC v. Accusearch, Inc.*, 570 F.3d 1187, 1201 (10th Cir. 2009) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

When a court grants injunctive relief, the injunction must "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). "Injunctions simply requiring a defendant to obey the law are generally too vague to satisfy Rule 65(d)." *Vallario v. Vandehey*, 554 F.3d 1259, 1268 (10th Cir. 2009) (quotation omitted). But the description of the enjoined conduct need not be "excessive," so long as it is "reasonable" and permits the defendant to "ascertain from the four corners of the order precisely what acts are forbidden." *Gentle Giant Moving Co. v. Gentle Giant Moving & Storage*, No. 17-cv-02762-PAB-NRN, 2020 WL 4904576, at *2 (D. Colo. Aug. 19, 2020) (first quoting *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1316 (10th Cir. 1998); and then quoting *IDG USA, LLC v. Schupp*, 416 F. App'x 86, 88 (2d Cir. 2011)). Moreover, an injunction "issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order." *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 184 (1968); *see also Weitsman v. Levesque*, No. 19-cv-00461-JLS-AHG, 2020 WL 6825687, at *16 (S.D. Cal. Nov. 20, 2020) (modifying proposed permanent injunction on defamatory speech to comply with the First Amendment (citing *Carroll*, 393 U.S. at 183–84)).

**ANALYSIS**

I.    **Jurisdiction**

    A.    **Subject Matter Jurisdiction**

Starting with subject matter jurisdiction, the Court finds that it possesses diversity jurisdiction under 28 U.S.C. § 1332.  Federal diversity jurisdiction exists in "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1). When determining citizenship, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  And "[t]he citizenship of a limited liability company is determined by the citizenship of all of its members."  *DIRC Homes, LLC v. Townhomes on Conejos, LLC*, No. 21-cv-00663-PAB-SKC, 2021 WL 1904619, at *1 (D. Colo. May 12, 2021) (citing *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015)).  Here, Allstate alleges that it is an Illinois corporation with its principal place of business in Illinois.  [Doc. 1 at ¶ 13].  PIP is a limited liability company whose members, John and Denise Cruz, are both citizens of Colorado. [*Id.* at ¶ 15]; *see also* [Doc. 120-1 (confirming that PIP is an LLC)].  Allstate is thus diverse from both PIP and Mr. Cruz.

Allstate has also met the amount-in-controversy requirement through its request for attorney's fees.  "Where attorneys' fees are provided by statute or contract, they may be included in the minimum amount in controversy to satisfy diversity jurisdiction."  *Stuart v. Cocorilla, Ltd.*, No. 18-cv-00926-KLM, 2019 WL 529517, at *4 (D. Colo. Feb. 11, 2019) (collecting cases)).  Colorado law authorizes recovery of attorney's fees in CCPA actions,

Colo. Rev. Stat. § 6-1-113(2)(b), and Allstate seeks more than $75,000 in attorney's fees from PIP, [Doc. 120 at 17].   Although the Court declines to award attorney's fees in conjunction with this Motion, *see infra* Part III.A, that does not defeat the "strong presumption favoring the amount alleged by the plaintiff," *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216–17 (10th Cir. 2003).   With both requirements satisfied under § 1332(a), the Court concludes that it has diversity jurisdiction over this case.

> **B.    Personal Jurisdiction**

Turning to personal jurisdiction, the Court first considers whether Allstate adequately served PIP.   Adequate service on a defendant is a prerequisite to the Court's personal jurisdiction over that defendant.   *See Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1292 (10th Cir. 2020).   Here, after multiple attempts to serve PIP in person, Allstate served PIP by certified mail at its registered address.   [Doc. 120 at 9]; *see also* [Doc. 49].   As the party attempting service, Allstate bears the burden of proving that service was valid.   *See FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).

Federal Rule of Civil Procedure 4(h) governs service on unincorporated associations, such as a limited liability company.   Relevant here, Rule 4(h)(1)(A) permits service "in the manner prescribed by Rule 4(e)(1) for serving an individual."   Rule 4(e)(1) authorizes service in accordance with the law of "the state where the district court is located or where service is made."   Allstate alleges that it served PIP in Colorado, so the Court need only consider whether the service by mail was valid under Colorado law. Pursuant to Colorado Rule of Civil Procedure 4(e), "Colorado law expresses a preference

for personal service." *McDaniel v. Rellos*, No. 19-cv-01506-MEH, 2020 WL 13831420, at *2 (D. Colo. May 21, 2020). However, if a corporate entity's "registered agent cannot with reasonable diligence be served, the entity may be served by registered mail or by certified mail, return receipt requested, addressed to the entity at its principal address." Colo. Rev. Stat. § 7-90-704; *see also* Colo. Rev. Stat. § 7-80-301 (applying corporate service rules to limited liability companies).

The Court agrees with Allstate that it validly served PIP by registered mail under § 7-90-704. At the time of service, Denise Cruz was the registered agent for PIP. [Doc. 120 at 8 n.1; Doc. 120-1]. Allstate made ten attempts to personally serve Ms. Cruz at multiple addresses, including PIP's registered address. [Doc. 120-5]. The Court finds that this constitutes "reasonable diligence" in attempting to serve Ms. Cruz in person. Allstate then served PIP by certified mail at PIP's registered "[p]rincipal office mailing address." [Doc. 49-3; Doc. 120-1]. Along with a certified mail receipt, Allstate filed a United States Postal Service tracking document that indicates the Complaint and Summons were delivered to an "Individual" at the registered address on May 16, 2024. [Doc. 49-3]. Service on PIP was therefore valid under § 7-90-704 and Rules 4(h)(1) and 4(e)(1).

The Court next considers whether it may exercise personal jurisdiction over PIP. A court may exercise general personal jurisdiction or specific personal jurisdiction over a defendant. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262, (2017). General jurisdiction means that a court may exercise personal jurisdiction over an out-of-state defendant for all purposes. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). General jurisdiction is available if the defendant's

affiliations with the forum state are "so continuous and systematic" that it is "essentially at home" in the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). For corporate defendants, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up). Courts routinely apply *Daimler*'s general jurisdiction rule to limited liability companies.[2] *See, e.g.*, *Eighth Dist. Elec. Pens. Fund v. Watts Elec., LLC*, 2021 WL 6125376, at *5 (D. Colo. Dec. 28, 2021); *JTH Tax, LLC v. Merit*, No. 24-cv-00683-GPG-STV, 2025 WL 1151477, at *4 (D. Colo. Jan. 28, 2025), *recommendation adopted by* 2025 WL 1151454 (D. Colo. Feb. 21, 2025). Here, PIP is a Colorado limited liability company with its headquarters in Colorado. [Doc. 1 at ¶ 15; Doc. 120-1]. The Court accordingly concludes that PIP is essentially "at home" in Colorado, such that the Court has general personal jurisdiction over PIP. *See Goodyear*, 564 U.S. at 919.

In sum, the Court finds that it possesses both subject matter and personal jurisdiction. The Court further notes that the Motion is procedurally proper because it follows the Clerk of Court's entry of default against PIP. *See* [Doc. 110].

## II.    Liability

### A.    Defamation

Under Colorado law, Allstate must prove the following elements to prevail on its defamation claim: "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence

---

[2] Indeed, *Daimler* itself involved a "limited liability corporation." 571 U.S. at 123.

of special damages to the plaintiff caused by the publication." *Williams v. Dist. Ct.*, 866 P.2d 908, 911 n.4 (Colo. 1993). The alleged defamatory statements must also contain a material falsehood. *Fry v. Lee*, 408 P.3d 843, 854 (Colo. App. 2013). Moreover, because Allstate's proposed injunction restricts PIP's defamation on a statement-by-statement basis, the Court evaluates each alleged defamatory statement individually. To distinguish the statements, the Court adopts the numbering Allstate assigns to the alleged defamatory statements. *See* [Doc. 120-9].

Regarding the first element, whether a statement is defamatory is a question of law. *Fry*, 408 P.3d at 848 (citation omitted). "A statement is defamatory if it prejudice[s] the plaintiff in the eyes of a substantial and respectable minority of the community." *Coomer v. Donald J. Trump for President, Inc.*, 552 P.3d 562, 587 (Colo. App. 2024) (quotation omitted). In conducting this analysis, the Court looks to whether the statements at issue are defamatory per se or defamatory per quod. *See Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004). A statement that is defamatory per se "must carry its defamatory imputation on its face and is actionable without an allegation or proof of damages." *See McGettigan v. Di Mare*, 173 F. Supp. 3d 1114, 1126 (D. Colo. 2016) (citing *Inter-State Detective Bureau, Inc. v. Denv. Post, Inc.*, 484 P.2d 131, 133 (Colo. App. 1971)). Traditionally, defamation per se includes statements alleging "(1) a criminal offense; (2) a loathsome disease; (3) a matter incompatible with the individual's business, trade, profession, or office; or (4) serious sexual misconduct." *Gordon*, 99 P.3d at 79 (citations omitted). Defamation per quod, on the other hand, "requires innuendo or extrinsic evidence to establish its defamatory nature." *Keohane v. Stewart*, 882 P.2d 1293, 1297 n.3 (Colo. 1994).

The Court concludes that most of the alleged defamatory statements are defamatory per se. Specifically, referring to the statements by their assigned numbers in [Doc. 120-9], the Court finds that all statements except statement Nos. 2, 4, 11, 26, 39, 40, and the second statement No. 22[3] fall within a traditional category of defamation per se.[4] Many of these statements allege that Allstate compromises or shares its customers' personal information in exchange for gift cards, which amounts to conduct incompatible with Allstate's trade. *E.g.*, [*id.* at 9 (statement Nos. 24–25)]; *see also Coomer v. Make Your Life Epic LLC*, --- F. Supp. 3d ---, 2025 WL 1207592, at *12 (D. Colo. Apr. 25, 2025) (holding that accusations of election fraud against former executive for voting systems company alleged conduct incompatible with his profession). Other statements accuse Allstate of facilitating "identity theft" or a "human trafficking scheme." [Doc. 120-9 at 5 (statement Nos. 13, 16)]. These statements impute a criminal offense to Allstate. Thus, aside from the seven statements identified above, Allstate has established that PIP's statements are defamatory and satisfy the first element of a defamation claim.

---

[3] The Court notes that two statements are labeled as statement No. 22 in [Doc. 120-9]. *See* [Doc. 120-9 at 8]. The first statement, claiming that Allstate shares its customers' personal information, is defamatory per se. The second statement, explaining that PIP was created to protect "[a]nyone who gave their personal information" to Allstate, is not defamatory on its face.

[4] Having found that certain statements do not amount to defamation per se, the Court need not consider whether they could be defamation per quod. To succeed on a claim for defamation per quod, the plaintiff must prove special damages. *See Lind v. O'Reilly*, 636 P.2d 1319, 1320–21 (Colo. App. 1981) (citing *Brown v. Barnes*, 296 P.2d 739 (Colo. 1956)). Special damages are "limited to specific monetary loss." *Id.*; *accord FAA v. Cooper*, 566 U.S. 284, 295 (2012). And Allstate expressly disclaims any monetary damages on its defamation claim. [Doc. 120 at 17]. Accordingly, the Court only considers Allstate's defamation claim to the extent the alleged statements are defamatory per se.

The analysis for the second element—publication—is straightforward. The defamatory statements were posted to PIP's websites or social media accounts. *See* [Doc. 120-9]. Publishing a statement to a public website qualifies as publication for defamation purposes. *See Schroeder v. Doe*, No. 20CA0830, 2021 WL 12346724, at *4 (Colo. App. Nov. 4, 2021) (finding "prima facie case" for defamation based on negative business reviews posted to public website); *Carroll v. Trump*, 650 F. Supp. 3d 213, 225 (S.D.N.Y. 2023) ("Written statements actionable as libel include statements published on social media outlets and on the Internet." (applying New York law)).

As for the third element—fault—the Court need not decide which level of fault applies, because the Court finds that PIP's conduct satisfies even the elevated actual malice standard. Actual malice exists where the defendant made a defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). To satisfy this standard, "the evidence must permit the conclusion that the defendant in fact entertained serious doubts as to the truth of the publication or was highly aware of its probable falsity." *Coomer*, 552 P.2d at 591 (citations omitted). A plaintiff may make this showing with circumstantial evidence, including "(1) the speaker's hostility toward the plaintiff; (2) inconsistencies in the source's account; (3) reasons to doubt the veracity or reliability of the source; (4) the inherent improbability of the claim; and (5) other credible information contradicting the information." *Id.* (collecting cases). In evaluating Allstate's exhibits and well-plead factual allegations, the Court is mindful that "the actual malice determination is generally a question of fact." *McDonald v. Wise*, 769 F.3d 1202, 1220 (10th Cir. 2014) (citing *Price v. Conoco, Inc.*, 748 P.2d 349, 351 (Colo. App. 1987)); *see also* Restatement (Second)

of Torts § 617 (A.L.I. 1977) ("[T]he jury determines whether . . . the defendant had the requisite fault in regard to the truth or falsity of the matter and its defamatory character.").

The Court agrees with Allstate that the unrebutted allegations in the Complaint regarding PIP's statements and conduct demonstrate actual malice.  As an initial matter, Allstate alleges—and the Court takes as true—that John Cruz's acts and statements as an agent and representative of PIP are imputed to PIP.  [Doc. 120 at 13; Doc. 1 at ¶¶ 30–35]; *see Stortroen v. Beneficial Fin. Co. of Colo.*, 736 P.2d 391, 395 (Colo. 1987) ("The existence of an agency relationship is ordinarily a question of fact."); *Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 41 (Colo. 1997) (("[A] corporation can only act through its agents, and their acts within the scope of their authority are the acts of the corporation."). Allstate alleges that Mr. Cruz seeks revenge against Allstate after Allstate prevailed against him at summary judgment in *Cruz I*.  [Doc. 1 at ¶¶ 9–10, 25–27, 66].  After the prior lawsuit, Mr. Cruz and PIP made numerous false statements about Allstate without any corroborating evidence.  *See* [*id.* at ¶¶ 9, 24, 59].  Information on Allstate's public website contradicts Mr. Cruz's claims about Allstate's data practices.  [*Id.* at ¶¶ 50–57]. But instead of investigating the veracity of his claims, Mr. Cruz manipulated deposition transcripts from *Cruz I* and posted them to PIP's websites as "evidence" for his claims. [*Id.* at ¶¶ 35 & fig. 3, 36 & fig. 4, 63–65].  The Court thus agrees with Allstate that "PIP either failed to investigate the falsity of its statements or chose to ignore it."  [Doc. 120 at 14].  This conduct demonstrates a reckless disregard for the truth and satisfies the actual malice standard for the third element of defamation.

The final two elements—damages and falsity—require little discussion.  Regarding damages, the Court has found that nearly all of the alleged defamatory statements are

defamatory per se, so Allstate's reputational damages are "conclusively presumed." *Gordon*, 99 P.3d at 79 (quotation omitted).  As for falsity, whether the alleged defamatory statements are false is a question of fact.  *McIntyre v. Jones*, 194 P.3d 519, 528 (Colo. App. 2008) (collecting cases); *accord* Restatement (Second) of Torts § 617.  The Court accordingly takes as true Allstate's well-pleaded factual allegations that it does not sell or share its customers' personal information and does not participate in identity theft or human trafficking.  *See Bixler*, 596 F.3d at 762.  *See generally* [Doc. 1].  The Court finds PIP liable on Allstate's defamation claim.  *See* [Doc. 120-9].

### B.    Deceptive Trade Practices

Allstate's second claim alleges that PIP engaged in deceptive trade practices in violation of the CCPA.  [Doc. 1 at ¶¶ 80–89].  The CCPA is designed to "regulate commercial activities and practices which, because of their nature, may prove injurious, offensive, or dangerous to the public."  *Hall v. Walter*, 969 P.2d 224, 230 (Colo. 1998) (quotation omitted).  To prevail on a CCPA claim, a plaintiff must prove:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 98 (Colo. 2011).  Courts construe the CCPA liberally based on its "broad remedial relief and deterrence purposes."  *Hall*, 969 P.2d at 230.

Regarding the first element, the Court agrees that PIP engaged in an unfair or deceptive trade practice.  The CCPA provides that "[d]isparag[ing] the goods, services, property, or business of another by false or misleading representation of fact" qualifies as

a deceptive trade practice. Colo. Rev. Stat. § 6-1-105(h). Here, in accusing Allstate of selling its customers' personal information and facilitating criminal activity, PIP has disparaged Allstate's business. And the Court takes as true Allstate's allegations that these statements are false. *See Bixler*, 596 F.3d at 762.

With respect to the second element, the Court agrees that the statements at issue were made in the course of PIP's business. PIP's websites explain that PIP was "created to protect the Identity of anyone who gave Allstate Insurance Company their personal information." [Doc. 1 at ¶ 37(d)]. The websites direct users to an "application" for various identity protection products through another business, LegalShield. [*Id.* at ¶¶ 34, 67]. As alleged, PIP and Mr. Cruz earn commissions on LegalShield products sold through PIP. [*Id.* at ¶ 34]. Thus, PIP's statements that Allstate sells its customers' personal information and facilitates identity theft were made in the course of PIP's business and in furtherance of PIP's commercial interests. [*Id.* at ¶ 67].

This understanding of PIP's business model means that, for the third element, PIP's false statements "significantly impact[] the public as actual or potential consumers" of PIP's product. *Garcia*, 263 P.3d at 98. The Colorado Supreme Court has explained that a plaintiff may satisfy this element by showing that the "misrepresentations were directed to the market generally, taking the form of widespread advertisement and deception of actual and prospective purchasers." *Hall*, 969 P.2d at 235. And PIP not only published its misrepresentations through its own websites and social media accounts, it also purchased advertising space on Chicago and Denver area television stations to attract more potential customers to its website. [Doc. 120-9 at 14–15 (Statement Nos. 36–40)]; *see also* [Doc. 1 at ¶¶ 46–48; Doc. 62-8; Doc. 62-9; Doc. 62-

16

10].  The Court agrees with Allstate that this conduct meets the third element of a CCPA claim.

The Court considers the fourth and fifth elements together.  The fourth element—injury in fact to a legally protected interest—incorporates the standing doctrine used by Colorado courts.  *See Hall*, 969 P.2d at 230–31, 236; *see also Wimberly v. Ettenberg*, 570 P.2d 535, 538 (Colo. 1977).  Colorado's standing doctrine, including the "injury in fact" requirement, adopts federal standing doctrine.  *Wimberly*, 570 P.2d at 538.  And as Allstate points out, the Supreme Court recently reiterated that the publication of defamatory statements causing reputational harm qualifies as an injury in fact.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021); [Doc. 120 at 16].  Although no Colorado court has adopted *TransUnion*'s understanding of reputational harm in the standing context, *TransUnion* is consistent with Colorado case law treating "the publication of the libel itself" as inflicting a legal injury.  *See Gordon*, 99 P.3d at 79.  And because the CCPA enumerates "[d]isparag[ing] the business of another by false or misleading representation of fact" as an actionable deceptive trade practice, the Court concludes that Allstate's reputational harm caused by such disparagement implicates a legal interest protected by the CCPA.  [Doc. 1 at ¶ 69 (alleging reputational harm)]; *cf. Hall*, 969 P.3d at 236–37 (observing that the CCPA "does not specify injuries against which it is intended to guard," but reading the statute broadly to conclude that property is a legally protected interest under the CCPA).  This renders the fifth element self-explanatory, because Allstate alleges that Mr. Cruz and PIP caused its reputational harm by publishing the statements at issue, and there is no indication of any other source of Allstate's harm.

Because Allstate has established all five elements of a claim for deceptive trade practices, the Court finds PIP liable under the CCPA.

III.    **Relief**

A.    **Attorneys' Fees**

Allstate seeks attorney's fees under the CCPA.  [Doc. 120 at 16–17]; Colo. Rev. Stat. § 6-1-113(2).  "When determining what is a reasonable award of attorney fees, the district court must calculate the 'lodestar,' which is the reasonable number of hours spent on the litigation multiplied by a reasonable hourly rate."  *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("It remains for the district court to determine what fee is 'reasonable.'").  "The party requesting attorney fees bears the burden of proving the amount of hours spent on the case and the appropriate hourly rates."  *United Phosphorus*, 205 F.3d at 1233.  To demonstrate reasonable hours, the party must submit records identifying each person for whom fees are sought, the amount of hours for which compensation is requested, and the tasks worked on during those hours.  *Id.*; *see also* D.C.COLO.LCivR 54.3.

The Court's analysis starts and ends at the "reasonable hours" component of the lodestar calculation.  Tenth Circuit case law requires that the party seeking fees for hours worked must submit "meticulous, contemporaneous time records" showing "how those hours were allotted to specific tasks."  *United Phosphorus*, 205 F.3d at 1233 (quotation omitted).  Although Allstate has submitted records of hours worked, it has redacted the "narrative" associated with each time entry.  *See* [Doc. 120-7].  Thus, Allstate has provided no evidence of how its attorneys allotted the claimed hours to specific tasks.

The Court appreciates that some entries may contain privileged information and require <u>reasonable</u> redaction. But Allstate's blanket redaction of all time entry narratives—on the apparent assumption that the Court would rubber stamp Allstate's fees—is wholly insufficient to meet Allstate's burden to prove that the claimed hours are reasonable. *See Hukill v. Okla. Native Am. Domestic Violence Coal.*, No. 06-cv-00662-CVE-PJC, 2008 WL 11491666, at *5 (N.D. Okla. Jan. 10, 2008) (rejecting "numerous hours claimed because the time records submitted were so heavily redacted that they do not provide the detail required under the applicable legal standards"). Accordingly, the Motion is respectfully **DENIED without prejudice** as to attorney's fees. To the extent Allstate seeks attorney's fees, it must do so in a timely motion supported by adequate documentation. *See* Fed. R. Civ. P. 54(d)(2); D.C.COLO.LCivR 54.3.

### B.    Costs

Allstate also seeks costs under the CCPA. [Doc. 120 at 17]; Colo. Rev. Stat. § 6-1-113(2). Pursuant to Federal Rule of Civil Procedure 54(d) and Local Rule 54.1, Allstate is **AWARDED** its costs. However, in this District, costs are taxed by the Clerk of Court, and Allstate must comply with this District's standard procedures for filing a bill of costs to obtain an award of costs. *See* D.C.COLO.LCivR 54.1.

### C.    Permanent Injunction

Finally, Allstate seeks a permanent injunction against PIP. Allstate asks the Court to (1) require PIP to remove the defamatory statements from its websites and social media accounts, (2) enjoin PIP from publishing or repeating these statements in the future, and (3) order PIP not to engage in further deceptive trade practices with respect to Allstate. [Doc. 120 at 21].

19

As an initial matter, the Court respectfully rejects the third portion of the requested injunction.  Simply ordering PIP not to engage in "deceptive trade practices" does not explain what acts are forbidden and amounts to an impermissibly vague "obey the law" injunction.  *Vallario*, 554 F.3d at 1268.  And as the Court has previously explained, the CCPA does not provide for injunctive relief against deceptive trade practices in an action by an individual private plaintiff.  *See* [Doc. 29 at 17–18].  Accordingly, the Motion is respectfully **DENIED** as to Allstate's request that PIP be enjoined from engaging in deceptive trade practices.  The Court confines its remaining analysis to whether Allstate is entitled to injunctive relief on its defamation claim.

To demonstrate that a permanent injunction is appropriate, Allstate must first show "actual success on the merits."  *Sw. Stainless*, 582 F.3d at 1191.  Because the Court has determined that Allstate is entitled to default judgment against PIP on its defamation claim, Allstate has achieved success on the merits and satisfies the first requirement for a permanent injunction.  *See Wendell H. Stone Co. v. Five Star Advert., LLC*, No. 19-cv-03157-PAB-STV, 2022 WL 4094067, at *5 (D. Colo. Sept. 7, 2022); *see also, e.g.*, *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 299 (E.D.N.Y. 2015) ("Plaintiff has established success on the merits due to defendants' default.").

As for the second element, Allstate asserts that PIP's statements inflict irreparable harm to Allstate's "longstanding and valuable customer relationships, goodwill, reputation, and legitimate business interests."  [Doc. 120 at 18].  Courts have recognized that "loss of control over a business's reputation and loss of goodwill can constitute irreparable harm."  *Equitable Nat'l Life Ins. Co. v. AXA Equitable Life Ins. Co.*, 434 F. Supp. 3d 1227, 1253 & n.159 (D. Utah 2020) (collecting cases); *see also Planned*

*Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1264 (10th Cir. 2016) (finding irreparable harm to abortion services provider's reputation where statements at issue accused it of selling fetal tissue, and provider's reputation was "critical to maintaining the trust of its patients").  Quantifying the harm to Allstate's reputation would be difficult, "if not impossible," and a damages award would not necessarily prevent PIP from continuing to publish the defamatory statements.  *See Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 949–50 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011).  And based on PIP's numerous and continuing[5] defamatory statements, the Court finds that monetary damages would be inadequate to safeguard Allstate's goodwill and business reputation.

In considering the third and fourth elements—balance of the equities and public interest—the Court weighs the First Amendment ramifications of enjoining PIP from publishing the statements at issue.  As the Court has previously explained in this case, "[u]nder modern case law, an injunction of defamation is permissible only if it is (1) 'narrowly tailored,' (2) 'based upon a continuing course of repetitive speech,' and (3) 'granted only after a final adjudication on the merits that the speech is unprotected.'" [Doc. 73 at 3 (quotation omitted)]; *see also Auburn Police Union v. Carpenter*, 8 F.3d 886, 903 (1st Cir. 1993) (same).  "Courts repeatedly have concluded that, once a judge or jury has made a final determination that the speech at issue is defamatory, an injunction prohibiting the defendant from repeating the defamatory speech does not constitute a

---

[5] Allstate alleges that the defamatory statements are still available on PIP's websites and social media accounts.  *See* [Doc. 120 at 18].  The Court has confirmed that, as of the date of this Order, the statements are still available on one website, https://savemepip.com, and Mr. Cruz's and PIP's social media accounts.  The other website, https://pip-personalidentityprotection.com, appears to be defunct.

prohibited prior restraint on speech."  [Doc. 73 at 4 (quoting *Wagner Equip. Co. v. Wood*,

893 F. Supp. 2d 1157, 1161 (D.N.M. 2012) (collecting cases))].

The Court considers the *Auburn Police* requirements in reverse order.  First, as

explained above, a default judgment against PIP means that Allstate has succeeded on

the merits of its claim.  In finding PIP liable for defamation, the Court has concluded that

PIP's statements were false and made with actual malice.  That mitigates any interest by

PIP or the public in PIP's statements:

> [T]here is no constitutional value in false statements of fact.  Neither the
> intentional lie nor the careless error materially advances society's interest
> in uninhibited, robust, and wide-open debate on public issues.  They belong
> to that category of utterances which are no essential part of any exposition
> of ideas, and are of such slight social value as a step to truth that any benefit
> that may be derived from them is clearly outweighed by the social interest
> in order and morality.

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) (quotation and internal citation

omitted).  Second, PIP's statements are repetitive and continuing.  The defamatory

statements are repetitive in the sense that they all repeat the same underlying claim that

Allstate sells its insureds' personal information and thus abets identity fraud and human

trafficking.  And the statements continue to be publicly available on PIP's website and

social media accounts.  The Court finds that this conduct warrants a permanent injunction

on PIP's ongoing defamatory speech.  *Cf. Pittsburgh Press Co. v. Pittsburgh Comm'n on

Hum. Rels.*, 413 U.S. 376, 390 (1973) (approving restraint on speech when the speech

was a "continuing course of repetitive conduct").

Third, and finally, the Court concludes that a "narrowly tailored" injunction is

possible.  Crafting such an order is more difficult in this case because, although PIP has

defaulted, Mr. Cruz has appeared and continues to oppose Allstate's claims.  *See* [Doc.

60].  As alleged, PIP acted almost exclusively through Mr. Cruz, who made many of the defamatory statements as a representative of PIP.  *See* [Doc. 120-9].  An injunction against PIP will necessarily restrain Mr. Cruz.  On the one hand, this scenario raises legitimate equity concerns, because Mr. Cruz—who proceeds pro se—will be bound by an injunction to which he could not respond.  *See supra* note 1; *Carroll*, 393 U.S. at 183–84 (emphasizing the importance of "[t]he participation of both sides" in crafting a narrowly tailored injunction on speech).  On the other, the Court will not ignore Allstate's own equitable interests.  An injunction against PIP that carves out Mr. Cruz entirely would effectively give Allstate no relief at all.  *Cf. Dallas Creek Water*, 933 P.2d at 41 ("[A] corporation can only act through its agents.").  And the fact that Mr. Cruz has appeared does not negate the reality that PIP, by virtue of its default, has conceded the factual allegations that entitle Allstate to relief.  *See Mrs. Condies*, 858 F. Supp. 2d at 1217; *see also Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 n.11 ("After an entry of default, a defendant cannot defend a claim on the merits.").

To balance the competing equities, the Court exercises its discretion to limit the requested injunction and enjoin statements by Mr. Cruz only to the extent he repeats PIP's statements or identifies himself as affiliated with PIP.  For instance, Mr. Cruz associated himself with PIP in a LinkedIn post promoting PIP that explains "Why *We* Began."  *See* [Doc. 120-9 at 6 (Statement No. 18) (emphasis added and capitalization altered)].  He also appeared on PIP's behalf in several local television spots that PIP sponsored.  [*Id.* at 14 (Statement Nos. 36–38)]; *see also, e.g.*, [Doc. 62-8].  And Mr. Cruz has reposted PIP's videos on his personal social media accounts.  *See, e.g.*, [Doc. 120-

9 at 8 (Statement No. 22) (LinkedIn post sharing a PIP video that displays PIP's logo and website)].

But to the extent that Mr. Cruz made or makes statements unrelated to PIP, an injunction at this time is not warranted. To be sure, this distinction is favorable to Mr. Cruz, given that all of his statements about Allstate may effectively be PIP's statements under agency principles. *See Dallas Creek Water*, 933 P.2d at 41 ("[Agents'] acts within the scope of their authority are the acts of the corporation."); *see also* Colo. Rev. Stat. § 7-80-405 (defining when a limited liability company's members and managers act as its agents). In light of Mr. Cruz's First Amendment interests, however, the Court finds this to be the most workable distinction in tailoring its injunction along the legal boundary between Mr. Cruz and his company. And in practice, this injunction is not so narrow as to deprive Allstate of meaningful relief. Mr. Cruz's ability to exploit the limit on this injunction by making independent statements regarding Allstate is necessarily curtailed by the fact that he can no longer display defamatory statements about Allstate that are associated with or attributable to PIP. By limiting the injunction on Mr. Cruz's statements in this manner, the Court finds that Allstate's requested injunction is sufficiently "tailored as precisely as possible to the exact needs of the case" to comport with the First Amendment.[6] *Carroll*, 393 U.S. at 184.

---

[6] Of course, to the extent that Mr. Cruz continues to make similar statements in his own individual capacity, he faces the potential peril that such continuing acts will form the basis of additional claims or relief. Once the defamation claim is resolved in favor of either Allstate or Mr. Cruz, the Court will revisit the scope of this injunction as necessary at that time.

The Motion is thus respectfully **GRANTED in part** and **DENIED in part** as to Allstate's request for permanent injunctive relief against past and future defamatory statements by PIP and its agents.  Below, the Court sets out the past statements and future conduct covered by the injunction.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)    Plaintiffs' Motion for Default Judgment [Doc. 120] is **GRANTED in part** and **DENIED in part**;

(2)    Default judgment **SHALL ENTER** against Defendant PIP Personal Identity Protection LLC;

(3)    The Motion [Doc. 120] is **DENIED without prejudice** with respect to Plaintiff's request for attorney's fees;

(6)    Plaintiffs are **AWARDED** their costs pursuant to Federal Rule 54(d) and Local Rule 54.1;

(7)    Within 14 days of this Order, Defendants John Cruz and PIP Personal Identity Protection LLC are **ORDERED** to remove the following from PIP's websites and Mr. Cruz's and PIP's social media accounts:

   a.    Videos that contain the claim that consumers who "checked Allstate for insurance" or "purchased an extended warranty from Allstate" have had their sensitive personal information stolen, including the statement that "Allstate has testified that Allstate sells your personal information to anyone for gift cards.  Your name, social security, date of birth, drivers

license.   You are not in good hands.   You need personal

identity protection.";

b.    Statements that "Allstate representatives have stated under

oath in Federal Court[.]    Depositions of Allstate

Representatives, Allstate Executives are on PIP-Personal

Identity Protection. Allstate representatives only need to

follow three (3) rules:    [1] Use Allstate electronic

communication, email, phone, fax. Used to transfer your

personal information; [2] Not allowed to report to any

government agency [3] Only form of payment allowed to be

paid to Allstate representatives, Gift Cards.";

c.    Statements that direct the viewer or reader to "Watch how

ALLSTATE plays an important role with your identity theft.";

d.    Videos that contain the statement:   "Meet John, an unwitting

Allstate customer.  His personal details, name, social security

number, birthdate, address were traded for gift cards.  Visa,

Mastercard, American Express, and Target.  John's life was

traded for gift cards.   Armed with John's information, the

culprit went further, discovering where he worked and his

income.  They applied for credit cards and secured new car

loans, eventually selling the cars for parts.  Days later, John's

world crumbled.  His credit score tanked, and he realized his

identity was used for fraud.  The credit cards remained unpaid,

leaving John with the consequences. Destroyed credit, unpaid debts, and a life in disarray.";

e. Videos that contain the statement: "Meet John. Intent on gifting his wife a Costco washer and dryer with an Allstate warranty. Little did he know this decision would spiral into chaos. With trust, John shared personal details on Allstate's site for the warranty. Unbeknownst to him, his info was traded for gift cards, leading to false speeding accusations. Another man gets pulled over by police for speeding. He has an authenticated driver's license, which was actually John's personal information bought from Allstate by giving gift cards. After vacation, he discovered his compromised identity caused legal trouble by being arrested for three major speeding tickets. Allstate's careless data handling shattered trust. Sadly, Allstate refers, shares and transfers your identity to anyone paid with gift cards. This is what can happen to you when getting insurance from Allstate. Keep safe. Keep Happy.";

f. Videos that contain the statement: "In a chilling tale of identity theft and its devastating consequences, a seemingly innocent transaction that Allstate turns into a tragic human trafficking scheme. Purchasing personal information with gift cards, names, addresses, social security numbers, and driver's

license details leads to a nightmare.  A father in dire need
seeking asylum for his wife (47) and daughter (13) finds his
hopes shattered. . . . His wife and daughter were beaten,
raped, murdered.  Only through the purchased identities were
they identified; their lives taken for a few thousand dollars.  As
authorities trace back confronting a man who claims them as
family, the shocking truth emerges.  Allstate's negligence in
safeguarding customers' data, refusing accountability, is a
betrayal of trust.  Their silence leaves lives shattered. A stark
reminder of the grave consequences of unchecked
information sharing.";

g.    Videos that contain the statement:  "There was a miserable
story of human trafficking . . . where the human trafficker
impregnates one of his victims, a child . . . The human
trafficker purchases two more stolen identities where he can
move them place to place without any reluctance . . . Sadly,
Allstate refers, shares, and transfers identities to anyone.
Keep safe and make the world a better place.";

h.    Videos that contain the statement:  "You could be entitled to
money. In the past 15 years have you looked into Allstate for
insurance[?] Purchased a warranty from Allstate[?] Allstate
has testified [that] Allstate has been selling your personal
identity to anyone for gift cards. Go to savemepip.com. Protect

your personal identity. Register for class action lawsuit as savemepip.com. savemepip.com the best protection for you and your family.";

i.    Statements that "Allstate representatives have stated under oath in Federal Court, Allstate representatives are allowed to refer/share/transfer your personal information to anyone.";

j.    Mr. Cruz's February 2024 LinkedIn post that contains the statement: "WHY WE BEGAN. PIP-Personal Identity Protection was created to protect the Identity of anyone who gave Allstate Insurance Company their personal information. Name, Social Security Number, Date of Birth, Drivers License. Anyone who gave their personal information to any of Allstate subsidiary companies: Allstate representatives have stated under oath, Allstate representatives are allowed to refer/share/transfer your personal information to anyone. Getting paid with Gift Cards.";

k.    Videos that contain the statement: "Illegals want American identity and they are getting America's identity thanks to Allstate. America, you are not in good hands. Allstate is selling America's identity to anyone for gift cards. The vote is in. American needs PIP Personal Identity Protection. Go to savemepip.com. Save yourself, children, and family.";

l.    Videos that contain the statement: "America needs Personal

Identity Protection.  You are not in good hands . . . Criminals

now have access to American's personal identity.  Thank you,

Allstate.  Allstate is selling America's identity to anyone for gift

cards . . . go to savemepip.com.";

m.  Any statements or videos containing or referencing Mr. Cruz's

statement on Great Day Colorado that "Corporates sell your

identity.  They sell it everywhere around here.  You are – I'm

going to say Allstate.  They sell it.  They allow their

representative to sell your identity for gift cards under the

table, hidden.  And it's in depositions.  They've already

admitted to it and it's just mind-boggling that they still do it

today and nobody's getting involved and people for human

trafficking, to identity theft, to car loans, to credit card fraud. I

mean very soon, very soon nobody will be safe with their

identity at all.";

n.  Any statements or videos containing or referencing Mr. Cruz's

statement on Great Day Colorado that "We don't want

insurance company taking your identity and selling it to

anyone on the table.  Which I'm going to bring up Allstate.

They sell your identity for gift cards under the table. Agents,

executives all admit to it . . . They cannot just take your identity

and sell it for a couple of measly dollars and then those people

take those identities and go to other countries and use them."

o.   Any statements or videos containing or referencing Mr. Cruz's statement on Great Day Colorado that "I have been contacted . . . A lot of legal entities and government entities in multiple states regarding Allstate Insurance Company selling your identity.  They refer this year – they trade and they receive gift cards for doing so. . . . Hundreds, thousands and millions.  Nobody knows the exact number of how many people are involved, identity stolen which I find that leads to you could lose your house. . . . Big corporations work together and get your information and they use it against you.   But when Allstate sells your personal information to anyone on the streets as they admitted under oath, we have a major problem and it needs to be addressed and needs to stop.";

(8)   Defendant PIP Personal Identity Protection LLC is **PERMANENTLY RESTRAINED AND ENJOINED** from publishing, repeating or referencing the above statements in the future; and

(9)   This injunction applies to Defendant John Cruz only to the extent he publishes, repeats, or references the above statements.


DATED:  August 13, 2025                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge